CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
ANNUNZIATA CRUPI
3711 MENTONE AVE APT 19 LoS ANGELES 80034 CA
TELEPHONE NO.: 626 230 6517 FAX NO. (Optional):
E-MAIL ADDRESS: NANCYCRUPI1986@emin.com
ATTORNEY FOR *(Name):* PRo se

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 22 2023

David W. Slayton, Executive Officer/Clerk of Court

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS: 111 N HILL ST
MAILING ADDRESS:
CITY AND ZIP CODE: LoS ANGELES CA 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

**CASE NAME:** PETITION TO VACATE ARBITRATION AWARD
DENYING REMOVAL OF THE CASE CRUPI V. UFF FROM JAMS ETC

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | **CASE NUMBER:** 23STCP03048 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☑ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:

ANNUNZIATA CRUPI
*(TYPE OR PRINT NAME)*
► (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

ANNUNZIATA CRUPI
3711 MENTONE AVE
APT 19
LOS ANGELES 900 34 CA
PRO SE



SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

Case No. 23STCP03048

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 22 2023

David W. Slayton, Executive Officer/Clerk of Court

|  |  |
|---|---|
| Annunziata Crupi, an individual,<br><br>Petitioner / Plaintiff,<br><br><br><br>vs.<br><br><br>JAMS, an arbitration institution,<br><br>Arbitrator Jackson Lucky, an individual,<br><br>And one does through 100 inclusive,<br><br><br>Defendants | PETITION TO VACATE<br>ARBITRATION AWARD DENYING<br>REMOVAL OF THE CASE "Crupi v.<br>USC" FROM JAMS, AND/OR<br>REQUESTING TO REMOVE THE<br>CASE FROM JAMS |

1
2
3
4
5
6
7
8

PETITION – page 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

Case No. _____

| | |
|---|---|
| Annunziata Crupi, an individual,<br><br>Petitioner / Plaintiff,<br><br><br>vs.<br><br><br>JAMS, an arbitration institution,<br><br>Arbitrator Jackson Lucky, an individual,<br><br>And one does through 100 inclusive,<br><br><br>Defendants | PETITION TO VACATE<br><br>ARBITRATION AWARD DENYING<br><br>REMOVAL OF THE CASE "Crupi v.<br><br>USC" FROM JAMS, AND/OR<br><br>REQUESTING TO REMOVE THE<br><br>CASE FROM JAMS |

1

2

3

4

5

6

7

8

1   ANNUNZIATA CRUPI

2   3711 Mentone ave, apt 19

3   Los Angeles, CA 90034

4   (424) 230 6547

5   nancycrupi1986@gmail.com

6   In Pro Per

7

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  COUNTY OF LOS ANGELES

10

11   Annunziata Crupi, an individual,          ) Case No.:

12   Petitioner / Plaintiff,              )

13                                 )

14   Vs.                             )

15                                 )

16   JAMS, an arbitration institution,        )

17   Arbitrator Jackson Lucky, an individual   )

18   And one does through 100 inclusive,    )

19   Defendants                   )

20

21

22

23                             Dated this_____

24

25

1    **PETITION TO VACATE ARBITRATION AWARD DENYING**
2    **REMOVAL OF THE CASE "Crupi v. USC" FROM JAMS,**
3    **AND/OR REQUESTING TO REMOVE THE CASE FROM JAMS**

4

5    In compliance with Ca. Civ. Proc. Code § 1286.2, the following document and the attached exhibits
6    have been served on July 27th, more than 21 days prior today's date, to the Arbitrator, and then to
7    all interested parties, namely JAMS, Arbitrator Jackson Lucky, and University of Southern
8    California (USC, Defendant in the case in JAMS, Crupi v. USC, to which the petition refers). The
9    petition has been served to the Arbitrator within 10 days from the issuance of the award / ruling.
10   The arbitrator, JAMS, and the other parties, have referred to the arbitration award as "ruling",
11   therefore, for clarity, Crupi / Petitioner refers to the award as "ruling" throughout the petition sent
12   to the other party and presented here below. The legal definition of award is: "a final judgment or
13   decision". The legal definition of ruling is: "a court's decision on a matter presented in a lawsuit".
14   Because the arbitrator's decision has been deemed final by the arbitrator, the law considers it an
15   award not a ruling. Because the petition refers not to a lawsuit in court but to a legal proceeding in
16   an arbitration institution, the arbitrator's decisions are considered as awards. One of the legal
17   definitions of "proceeding" is: "a step in a larger action". If and when Crupi has referred to the
18   awards as "ruling" it has been due to the other parties, to JAMS, and to the arbitrator, calling it a
19   ruling in the first place and in official documents, and therefore just for clarity. The arbitrator's
20   decision has been officially an "award" in a legal proceeding defined as a step in a larger action.
21   As of today, despite Petitioner has even given notice (legally unnecessary) of the expired 21 days
22   to vacate the ruling and remove the case from JAMS, the arbitrator Judge Lucky has not vacated
23   its award / ruling nor has approved Crupi's request to remove the case from JAMS. Judge Lucky
24   has instead claimed that he doesn't have the jurisdiction to vacate his own ruling because the law
25   Crupi refers to in the petition is a California State law, confirming his own incompetence and/or
26   gross unfairness and/or fraud and further prejudicing Crupi's rights.
27   Crupi is in extreme poverty, is in pro se, is not a lawyer, is working 24/7, and, since Crupi has
28   become a whistleblower, has been victim of a real persecution which constitutes of constant and

persistent attacks to Crupi's properties, accounts, sources of income, health and well-being, reputation, and of Crupi as a jurisdictional entity, civilian, member of the community, California and US resident, consumer, taxpayer, and patient. As a consequence, there were some typos in the originally served petition (e.g. exibit instead of exhibits) and some errors with the numbering of the exhibits (exhibits which Defendants already possessed before being served with the petition, and that were served together with the petition), which have been here corrected for clarity. Other than the corrected errors, properly indicated, the remaining text of the document is exactly the same served to the interested parties, and states as follows:

## PETITION TO VACATE JAMS ARBITRATOR'S RULING AND/OR REMOVE CASE FROM JAMS

Petitioner, Annunziata Crupi (herein after "Petitioner" or "Claimant"), in pro se, requests the Court to:

a) vacate the ruling(s) made by the JAMS' arbitrator (Judge Jackson Lucky, herein after "Arbitrator") on the case Crupi vs University of Southern California (herein after "USC" or "Respondent" or "Defendant") (Ref #5220000062):
   a. Denial to Remove the case from JAMS
   b. Denial to Appeal to the Denied request to remove the case from JAMS
b) order JAMS to remove the case from their forum and allow Petitioner to proceed with the case in Court

The Law states the following:

Ca. Civ. Proc. Code § 1286.2

Section 1286.2 - Grounds for vacating award

(a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following:

(1) The award was procured by corruption, fraud or other undue means.

(2) There was corruption in any of the arbitrators.

(3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.

(4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.

1  (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the
2  hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence
3  material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.

4  (6) An arbitrator making the award either:

5  (A) failed to disclose within the time required for disclosure a ground for disqualification of which the
6  arbitrator was then aware; or

7  (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of
8  timely demand to disqualify himself or herself as required by that provision. However, this subdivision
9  does not apply to arbitration proceedings conducted under a collective bargaining agreement between
10  employers and employees or between their respective representatives.

11  (b) Petitions to vacate an arbitration award pursuant to Section 1285 are subject to the provisions of
12  Section 128.7.

13  C.C.P. § 128.7 requires the party seeking sanctions to comply with a two-step process for presentation to
14  the court. The motion must first be served on the party against whom sanctions are sought, but not filed
15  with the court. The party against whom sanctions are sought has 21 days to withdraw the offending
16  pleading. If the pleading is not withdrawn after 21 days, the party seeking sanctions may then proceed to
17  file the motion with the court. There is no pre-filing notice requirement on a motion for summary
18  judgment.

19  ## Background facts for the request

20  Petitioner has been victim of several abuses perpetrated by University of Southern California and its
21  associates/employees. Petitioner has therefore hired a lawyer (Barkhordarian law firm, herein after "the
22  lawyer"), which, unbeknown to petitioner, was associated with USC and with JAMS. Petitioner has been
23  victim of misrepresentation by the lawyer, who filed a demand for arbitration in JAMS (in November 2021)
24  without discussing it with Petitioner. When, in July 2022, Petitioner released the lawyer due to his
25  misconducts, the lawyer shared the arbitration demand filed in JAMS with Petitioner, who realized that
26  the case filed in JAMS was also inaccurate, incorrect, grossly belittled (e.g. the settlement has been set to
27  $25,000 and it only lists 2 out of the 14 claims filed by petitioner to Court just to commence the legal
28  action), and that the lawyer had consciously changed the claim of "wrongful termination" into a claim of
29  "wrongful constructive termination", potentially leading Petitioner to miss the deadline of the statute of
30  limitation to file that claim, being 2 instead of 3 years as for most of the other claims. The lawyer has
31  sabotaged the case to the extent that Petitioner is now in pro se because hundreds of lawyers, contacted
32  over the past year and a half, have refused the case stating that the previous lawyer has sabotaged the
33  case and that changing the wrongfully set settlement amount is now challenging and therefore the case,
34  despite the evidence is extremely solid, is not worth the effort any longer, especially considering how
35  aggressively USC fights against Claimants and how much money it invests regardless of the value of the
36  case.

37  Due to the above-described facts, Petitioner has now an arbitration demand ongoing in JAMS which
38  contains information that petitioner has not approved, and that has been filed to JAMS involuntarily, via
39  misrepresentation of petitioner and via misinformation and concealing of facts at the hands of the lawyer.
40  The lawyer has several cases in JAMS and has a tight relationship with the institution, and with USC.

Despite almost 2 years have passed, the arbitration demand has not been heard yet. JAMS has allowed the other party to respond to Petitioner's arbitration demand 1 year and a half after the deadlines defined by JAMS rules. Around April 19th 2023, Petitioner attempted to request JAMS to receive information on how to file the proper claims, especially the wrongful termination claim, before the deadline set by the statute of limitation (May 27th 2023), and on whether a new arbitration demand was necessary. After that communication, which, as of today, is still left without an answer, the initially appointed arbitrator filed a recusal, 14 days before the end of the statute of limitation, leaving petitioner without arbitrator (who was necessary in order to respond to Petitioner's request and to meet the statute of limitations). The following arbitrator, Judge Lucky, has been appointed after the end of the statute of limitation (June 7th). Within that timeframe, on May 25th, Petitioner, left without an Arbitrator by JAMS at a crucial time in the case, filed the case in State Court in order to meet the statute of limitations.

Petitioner has attempted to remove the case from JAMS and continue the case in Court.

USC has immediately removed the case from State Court to Federal Court, illegitimately and unilaterally changing the matter of the case, and incorrectly making the cause of action arise from Federal laws' violations instead of State laws'. Petitioner has filed to Federal Court a request to remand the case to State Court, and has filed to JAMS a request for removal of the case from JAMS. The request to remand the case to State Court is still pending and a hearing has been scheduled.

USC has requested to JAMS to delay the decision of the arbitrator regarding the removal of the case from JAMS, and has requested to Petitioner to withdraw the removal of the case to Federal Court in exchange for the approval of the removal of the case from JAMS. The Arbitrator immediately and without second thoughts approved the further delay requested by the other party, despite the request constituted a strategic move against Petitioner.

Petitioner requested to provide additional information and evidence if deemed necessary by the Judge, and to proceed with ruling the motion of removing the case from JAMS, stating that the decision was independent from the fate of the case in Court. The Arbitrator (Judge Lucky) has denied the request to remove the case from JAMS ultimately due to lack of evidence, despite petitioner has offered to provide evidence, evidence that the arbitrator has never requested. Petitioner has requested to the arbitrator to receive instructions on how to appeal to that ruling and provide evidence, but the arbitrator has denied the request.

**PETITIONER REQUESTS TO THE COURT TO VACATE THE ARBITRATOR'S RULING AND/OR TO ORDER TO JAMS TO REMOVE THE ABOVE-MENTIONED CASE FROM JAMS FOR THE FOLLOWING REASONS:**

    a) JAMS and its associates (case managers and arbitrators) have demonstrated and admitted to gross unfairness and/or incompetence and/or lack of neutrality and/or fraud and/or misconduct and/or other undue means (such as harassment of petitioner and delay of the resolution of the case).

    b) The arbitrator has exceeded his powers.

    c) The rights of petitioner were substantially prejudiced by the refusal of the arbitrators to hear and/or admit evidence and by inappropriate arbitrator's decisions and behaviors.

1  Petitioner's requests to the Court are based on the EXHIBITS provided and on the following statements
2  made by the Judge and on JAMS associates' (case manager and arbitrators), on their behaviors, decisions,
3  statements, and responsiveness, towards petitioner and towards the other party in the case (and/or its
4  representatives)

5  *ARBITRATOR'S STATEMENTS FROM: RULING ON REQUEST FOR REMOVAL (EXHIBIT 1 [sic]; errata corrige:*
6  *Exhibit 2)*

7  "Petitioner is now representing herself. There is no substitution of counsel in the JAMS file, so this
8  Arbitrator is unaware of when or how she became self-represented."

9  "Respondent filed a Response on April 7, 2023. There is no Scheduling Order in the JAMS file, so this
10  Arbitrator is unaware of how or why the Response was untimely filed under Rule 9(c)."

11  "This Arbitrator has had no contact with the former arbitrator. This Arbitrator was appointed on June 7,
12  2023."

13  "on July 11, 2023, Petitioner emailed the Case Manager and requested that the Arbitrator rule on the
14  written submissions without a hearing or oral argument."

15  "On July 17, 2023, Petitioner inquired through JAMS Access about the status of the ruling. The Arbitrator
16  said he would rule by Monday, July 24, 2023. The Arbitrator has read and considered all the filings in the
17  case, including the Demand, the Response, and the documents filed in support of and in opposition to the
18  Request."

19  "Petitioner filed her Demand on November 21, 2021. She first requested removal of the Arbitration on
20  June 16, 2023, almost 19 months later. Because Petitioner seeks to undo her own Demand for Arbitration
21  over a year and a half after filing it, she has waived her right to challenge her own actions. Petitioner's
22  Request also fails because it is untimely."

23  "Normally, the Arbitrator would hold a hearing on the Request because a Party has a right to be heard.
24  However, on July 11, 2023, Petitioner emailed the Case Manager and requested that the Arbitrator rule
25  on the written submissions without a hearing or oral argument."

26  "Petitioner filed a Demand with JAMS on November 12, 2021. In the Demand, she alleged two causes of
27  action, whistleblower retaliation and wrongful constructive termination in violation of public policy. She
28  did not file the case with JAMS under a court order compelling arbitration. She filed with JAMS voluntarily
29  through Counsel. […] As discussed above, Petitioner filed a Demand with JAMS. No court compelled her
30  to do so. Petitioner now seeks to challenge her own action. She cites no authority for her attempt to do
31  so. On this basis alone, her Request fails."

32  "a. Petitioner presents no evidence supporting her other claims; b. On top of her arguments attacking the
33  validity of the Agreement, Petitioner makes the following claims: 1. Petitioner's former counsel colluded
34  with Respondent, 2. JAMS committed fraud. Petitioner presents no evidence supporting her claims. For
35  this reason, her factual claims of collusion and fraud fail."

36  "9 CONCLUSION. Petitioner's Request for Removal fails procedurally and substantively. Consequently, the
37  Arbitrator denies it."

1     *ARBITRATOR'S STATEMENTS FROM: RULING ON INFORMAL REQUEST FOR APPEAL AND TO PROVIDE*
2     *EVIDENCE (EXHIBIT 2 [sic]; errata corrige: Exhibit 3)*

3     "There is no right to appeal under the Agreement. JAMS Employment Arbitration Rule 34 says: "The
4     Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree
5     in writing for such procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal
6     Procedure, it cannot unilaterally withdraw from it." The Arbitrator has read the Agreement, which does
7     not adopt the JAMS Optional Arbitration Appeal Procedure. So there is no right to appeal to JAMS. The
8     Arbitrator denies Petitioner's request for appeal because there is no right to appeal under the law or JAMS
9     Rules."

10    "The Arbitrator denies the request for an appeal and to provide evidence for two reasons. 1. There is no
11    right or procedure to appeal the Arbitrator's ruling. 2. No evidence would change the Arbitrator's ruling."

12    In the above-mentioned document, the Arbitrator has also cited some of the emails in which petitioner
13    requested to JAMS to have a hearing in writing and to be told whether more information was necessary
14    and to receive instructions on how and whether to provide it. Those pieces of evidence are missing from
15    the ruling on the removal of the case from JAMS, which has been denied due to the lack of evidence.

16

17                   # BASIS FOR REQUEST TO VACATE JUDGE'S RULING

18                             ## __PREMISE__

19    1) JAMS rules allow appealing to the arbitrators' decisions stating that the parties may agree AT ANY
20        TIME to Rule 34 (Optional Appealing procedure). JAMS rules, which included Rule 34, was linked
21        in the arbitration agreement together with all the other JAMS rules, and therefore is included in
22        the agreement. The parties have never disagreed to the optional appealing procedure.

23    2) JAMS defines both the Judge and the Case Manager as appropriate parties for official
24        communications, and Petitioner has communicated to both the Judge and the Case Manager both
25        using JAMS portal and via email

26    3) E-mail communication has been used by JAMS throughout the whole duration of the process as
27        an appropriate and official mean to communicate between the parties

28    4) The Judge has cited the emails exchanged by Petitioner and JAMS (case manager) in the denial to
29        appeal, therefore demonstrating that Judge could and would have access to each and every
30        communication on the case if Judge wanted to

31    5) JAMS rules allow each party to file evidence, and the Arbitrator is in charge of requesting the
32        evidence. The arbitrator is expected to request all relevant evidence before ruling on a decision
33        and before closing the motion. Rule 22: *"(d) Strict conformity to the rules of evidence is not*
34        *required, except that the Arbitrator shall apply applicable law relating to privileges and work*
35        *product. The Arbitrator shall consider evidence that he or she finds relevant and material to the*
36        *dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that*
37        *determination by principles contained in the Federal Rules of Evidence or any other applicable*
38        *rules of evidence; (h) When the Arbitrator determines that all relevant and material evidence and*
39        *arguments have been presented, and any interim or partial Awards have been issued, the*
40        *Arbitrator shall declare the Hearing closed."*

6) JAMS and its employees/associates (Case Manager and Judge) - who are native English speakers, are fully capable of understanding and reading English, and are expected to be fully trained on their role and duties by JAMS, and to communicate with one another. Similarly, JAMS is expected to oversee the arbitration cases and to keep track of all the documents exchanged even in case one arbitrator files a recusal and is replaced by another one who hasn't followed the case from the beginning.

7) JAMS and its associates are expected to be responsive and neutral with all parties

# CLAIMS

**1) THE ARBITRATOR HAS DEMONSTRATED AND ADMITTED TO GROSS UNFAIRNESS AND/OR FRAUD AND/OR MISCONDUCT AND/OR NEGLIGENCE AND/OR INCOMPETENCE AND/OR LACK OF NEUTRALITY, AND HAS EXCEEDED HIS POWERS**

Overall, the Judge has or has not followed / enforced JAMS rules, and he has or has not used and admitted as evidence the information and communication exchanged in the case, in ways that went against Petitioner's requests and best interests, while favoring Respondents. The Judge has systematically, consistently, and persistently, used two different metrics to judge over Petitioner's versus Respondent's actions, requests, and statements, and to admit, use, and access to, evidence, in ways that favored Respondent and damaged Petitioner.

**FACTS**

A) Petitioner filed a Request for Removal from Arbitration (Request) on June 16, 2023. Respondent filed a Response to the Request (Response) on June 30, 2023. Petitioner filed a Counter-Response (Reply) on June 30, 2023, and an Addendum to the Counter-Response (Addendum) on July 2, 2023. Respondent filed a Reply to the Counter-Response and Addendum (Sur-reply) on July 3, 2023.

B) After the Judge requested a hearing, Petitioner has requested to have a hearing in writing, as a special accommodation, and has repetitively requested to provide evidence. Indeed, Petitioner and Case Manager exchanged the following communication:

*July 8th*

*PETITIONER to Case Manager: "[…] as I am not a lawyer and I have PTSD, I always prefer to communicate in writing instead of attending hearings, so that I have the time and opportunity to educate myself on the law and have a fair interaction with the Judge and the other party. Please share the meeting's agenda and explain whether and why a meeting instead of a communication in writing is necessary, whether the Judge needs more information to make a decision regarding the removal of the case from JAMS, and what information is required.*

*July 11th*

*CASE MANAGER: "Are you requesting a decision on the papers submitted instead of a hearing with Judge Lucky?*

*PETITIONER Reply: "*I have not requested that*, my previous email was quite clear on what I was requesting, but I'' explain myself more clearly:*

*I am sure the Judge's time is as valuable as everyone else's and I'm sure that JAMS is supposed to schedule hearings only if those are truly necessary, therefore I am assuming that the hearing was*

1  *necessary to the resolution of the matter. If it wasn't, please explain why the Judge requested a*
2  *hearing that was not necessary.*

3  *If the hearing was necessary, then what I am requesting is (i) to receive information regarding*
4  *what the hearing was about, (i) what the Judge needs to know during the hearing that is important*
5  *for the resolution of the matter, (iii) to be able to provide this information in writing instead of*
6  *during a hearing in order to avoid to waste time and potentially get in trouble, because (A) I am*
7  *not a lawyer, and (B) I have PTSD. What I am indeed asking is a special accomodation as well. In*
8  *addition, I am communicating that each and every meeting with me will be recorded.*

9  *If the hearing was not necessary for the resolution of the matter, please explain why you have*
10 *tried to scheule it providing me with a list of dates of which the first one was the anniversary of*
11 *my failed marriage, confirming previous behavioral patterns, forcing me to spend time writing this*
12 *email and further inducing my PTSD, condition that I have kindly disclosed with you in advance."*

13

14 <u>Additional communication from Petitioner directly to Judge Lucky before the ruling:</u>
15 *7/17/2023 [...]  Please let me know if you need additional information to make your determination*
16 *7/12/2023 [...]  Please let me know if you need additional information to make your determination*

17

18 *(C)* Judge states: "*on July 11, 2023, Petitioner emailed the Case Manager and requested that the*
19 *Arbitrator rule on the written submissions without a hearing or oral argument.*"; "*Normally, the*
20 *Arbitrator would hold a hearing on the Request because a Party has a right to be heard. However,*
21 *on July 11, 2023, Petitioner emailed the Case Manager and requested that the Arbitrator rule on*
22 *the written submissions without a hearing or oral argument.*"; "*Petitioner presents no evidence*
23 *supporting her other claims; b. On top of her arguments attacking the validity of the Agreement,*
24 *Petitioner makes the following claims: 1. Petitioner's former counsel colluded with Respondent, 2.*
25 *JAMS committed fraud. Petitioner presents no evidence supporting her claims. For this reason, her*
26 *factual claims of collusion and fraud fail.*"; "*9 CONCLUSION. Petitioner's Request for Removal fails*
27 *procedurally and substantively. Consequently, the Arbitrator denies it.*"; "*There is no right to appeal*
28 *under the Agreement. JAMS Employment Arbitration Rule 34 says: "The Parties may agree at any*
29 *time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such*
30 *procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure,*
31 *it cannot unilaterally withdraw from it." The Arbitrator has read the Agreement, which does not*
32 *adopt the JAMS Optional Arbitration Appeal Procedure. So there is no right to appeal to JAMS. The*
33 *Arbitrator denies Petitioner's request for appeal because there is no right to appeal under the law*
34 *or JAMS Rules.*" "*The Arbitrator denies the request for an appeal and to provide evidence for two*
35 *reasons. 1. There is no right or procedure to appeal the Arbitrator's ruling. 2. No evidence would*
36 *change the Arbitrator's ruling.*"

37

38 **CONCLUSIONS**

39 Based on all the information stated above, information that JAMS, via the Case Manager and the
40 Arbitrator, was aware of, the following conclusions can be drawn:

41 (A) Petitioner has followed JAMS rules by requesting to the Arbitrator whether providing
42     additional information (i.e. evidence) was necessary before providing it

(B)  The Arbitrator has:

    a.  requested Petitioner to schedule a hearing, therefore he supposedly deemed it necessary

    b.  then deemed the hearing unnecessary for the resolution of the case and ruled without holding a hearing despite Petitioner requested a hearing in writing or otherwise in case the hearing was deemed necessary,

    c.  not requested any evidence, despite being in charge of requesting evidence, and despite the several attempts made by Petitioner to provide additional information (i.e. evidence),

    d.  then denied Petitioner's request to remove the case from JAMS due to lack of evidence. Indeed, Arbitrator's arguments can be summarized as follows:

        i.  evidence was insufficient or missing,

        ii.  Petitioner did not want to have a hearing, despite Petitioner had clearly communicated to the Case Manager that Petitioner wanted to have a hearing in case the hearing was necessary (communication to which the Arbitrator admittedly had access, and that could have been used as evidence),

        iii.  Petitioner was trying to undo her own actions (fact that could have been deemed false if the Arbitrator had allowed Petitioner to present evidence),

        iv.  Petitioner had waived the right to withdraw from arbitration due to untimely request (fact that could have been deemed false if evidence was presented by Petitioner, and statement that demonstrates lack of neutrality)

    e.  then stated, in the denial to appeal, that evidence was not necessary and that providing evidence would not change the ruling, and used that as an argument to deny Petitioner's request to file an appeal (Arbitrator states: "*8.2 No evidence would change the Arbitrator's ruling. Claimant asks to submit evidence. The Arbitrator denies this request because no evidence would change the Arbitrator's ruling.*"):

        HENCE:

        i.  If evidence was not necessary, then the hearing was not necessary, therefore the Arbitrator should have not requested a hearing - and right when petitioner was also dealing with deadlines of the case in Federal Court (the Federal Judge had set a hearing for the 7th of August 2023 and the deadline to file the discovery plan report for July 31st 2023) and on Petitioner's failed marriage anniversary (17th July 2023) - which therefore turned out to be just an attempt to harass Petitioner, and delay and sabotage the case, demonstrating Arbitrator's lack of neutrality and gross unfairness, and harassment of petitioner

        ii.  If evidence was necessary, then the Arbitrator should have requested it. Per JAMS rule 22, it is the Arbitrator's responsibility to request evidence if evidence is necessary, and per JAMS rules and based on the law, it is the Arbitrator's responsibility to set a hearing if deemed necessary.

Therefore the Arbitrator could not denied the request to remove the case from JAMS due to lack of evidence nor due to the lack of hearing, and therefore the ruling is grossly unfair and/or the Arbitrator has demonstrated incompetence.

The Arbitrator has committed self-incrimination multiple times, first not admitting nor requesting evidence, then stating that evidence was missing or insufficient (hence more evidence was necessary), then stating that more evidence would not change the ruling because unnecessary. By doing so, the Arbitrator has admitted to his own negligence and/or incompetence and/or fraud and/or gross unfairness against Petitioner, and to JAMS misconduct and gross unfairness.

(C) The Arbitrator has denied Petitioner of the right to a hearing, going against public policy, and constitutional and civil rights, systematically incorrectly interpreting Petitioner's clearly stated requests, and therefore also exceeding his powers and has substantially prejudiced Petitioner's rights

(D) The Arbitrator has denied Petitioner of the right to submit evidence, going against JAMS rules, public policy, and constitutional and civil rights, by not requesting evidence, of which Arbitrator was in charge based on JAMS rules (which were the only source of information for Petitioner regarding how and when to provide evidence) and by never replying to Petitioner's requests to submit additional information if necessary (evidence that the Arbitrator deemed necessary in the denial to Petitioner's request to remove the case from JAMS). By doing so, the Arbitrator has also exceeded his powers and substantially prejudiced Petitioner's rights

(E) Arbitrator has not enforced nor followed JAMS rules (e.g. Rule 22 and need for neutrality). By doing so, the Arbitrator has also exceeded his powers

(F) In the ruling denying Petitioner's request to remove the case from JAMS, the Arbitrator has not applied the law, which also expects that the Arbitrator thoroughly explains his decisions: "*The judge has to specify in writing the facts that the judge found to be true and the conclusions of law that the judge made to arrive at the decision. The facts must be based on the evidence presented to the judge at trial.*" In the ruling denying Petitioner's request to appeal to the ruling denying removal of the case from JAMS, the Arbitrator has thoroughly documented his decision, providing evidence and proofs that, if used in the first ruling, would have forced Arbitrator to admit that he himself has not requested evidence despite Petitioner's attempts to provide it, and that he himself has denied Petitioner of a hearing.

(G) The Arbitrator has demonstrated gross unfairness and/or incompetence and/or lack of neutrality, demonstrating that:

  a. he had access to the evidence that would demonstrate that Petitioner attempted to provide evidence and that Arbitrator never requested evidence,

  b. he decided to use the evidence only when he could use it against Petitioner, i.e. only in the denial to Petitioner's request to appeal but not in the ruling on Petitioner's request to remove the case from JAMS

By doing so, the Arbitrator has also exceeded his powers.


**2) THE ARBITRATOR HAS DEMONSTRATED LACK OF NEUTRALITY AND/OR INCOMPETENCE BY NOT ALLOWING PETITIONER TO PRESENT NECESSARY EVIDENCE THAT PETITIONER HAD LISTED IN THE REQUEST TO REMOVE THE CASE FROM JAMS (EXIBIT 1 [sic]; errata corrige: Exhibit 1), EVIDENCE DEMONSTRATING THAT PETITIONER HAS ALSO THE RIGHT TO REMOVE THE CASE FROM JAMS**

1    **FACTS**

2    The Arbitrator states the following: "*Petitioner filed a Demand with JAMS on November 12, 2021. In the*
3    *Demand, she alleged two causes of action, whistleblower retaliation and wrongful constructive*
4    *termination in violation of public policy. She did not file the case with JAMS under a court order compelling*
5    *arbitration. She filed with JAMS voluntarily through Counsel.* […] *As discussed above, Petitioner filed a*
6    *Demand with JAMS. No court compelled her to do so. Petitioner now seeks to challenge her own action.*
7    *She cites no authority for her attempt to do so. On this basis alone, her Request fails.*"

8    A)   The law states that: a voluntary act is a "willed bodily movement". To will, in the sense of
9         relevance to the VAR, is not merely to mentally represent the bodily movement and for that bodily
10        movement to be guided by that representation. If the mental state that guides the bodily
11        movement is not "conscious"—a term explicitly used in the law—then that mental state is not a
12        willing, or a volition, and the bodily movements it guides are therefore not voluntary actions. So
13        the law provides two significant limitations in its definition of a voluntary act: only bodily
14        movements count, and, of those, only bodily movements guided by conscious mental
15        representations count. There are thus (at least) two kinds of voluntary action, in the ordinary
16        sense, that do not count as voluntary actions in the law's sense: (1) voluntary thoughts (e.g.,
17        voluntarily thinking about a problem); and (2) bodily movements guided by unconscious mental
18        representations of them. https://lawexplores.com/the-voluntary-act-requirement/
19   B)   The law states that: "voluntary" is used to indicate willfulness or intention.
20        https://www.law.cornell.edu/wex/voluntary#:~:text=In%20reference%20to%20law%2C%20%E2
21        %80%9Cvoluntary,resources%20available%20on%20the%20property.
22   C)   Petitioner has never received, from the counsel who represented Petitioner at the time of filing
23        of the arbitration demand, the content of the arbitration demand itself.
24   D)   As evidence of that:
25        *a.*   Petitioner's narrative and claims, as filed in State Court, are different than those filed by
26              Petitioner's counsel without Petitioner's approval, and can be demonstrated by the
27              evidence
28        *b.*   Petitioner does not possess any communication exchanged with the Barkhordarian law
29              firm regarding the content of the arbitration demand before the filing of the arbitration
30              demand,
31        *c.*   Petitioner has received the arbitration demand in July 2022 after releasing the
32              Barkhordarian law firm,
33        *d.*   Petitioner has complained in writing with the Barkhordarian law firm regarding the
34              content of the arbitration demand once Petitioner has received the document from the
35              law firm,
36        *e.*   Petitioner has requested in writing insistently and multiple times to the Barkhordarian
37              law firm to share emails proving that Petitioner was aware of the content of the
38              arbitration demand, and nothing has been provided to Petitioner.
39   E)   Petitioner is not a US citizen and at the time of filing of the arbitration demand Petitioner had just
40        received their green card. Petitioner was not aware of how the US jurisdictional system works,
41        nor had ever had a lawyer nor a lawsuit in the USA, nor was aware that an "arbitration demand"
42        and a "lawsuit" were not equivalent terms and were used to refer to different legal procedures.

F) Petitioner has been victim of coercive control from the lawyer(s), before, during, and after the filing of the arbitration demand, via psychologically and emotionally manipulative tactics involving gaslighting, and by threatening in writing to financially harm Petitioner, therefore via extortion. Petitioner was already on PTSD, unemployed, had been wrongfully denied unemployment benefits, and has never found another employment job after the termination, despite the hundreds of job applications submitted, therefore the PTSD has been further aggravated by the coercive control and by the extortion perpetrated by the counsels (which petitioner had to pay $12,000 to release).

G) Petitioner was unconscious of what filing the claims to JAMS meant, and of the fact that the option of filing the claim to court was available. Petitioner had been convinced, via the arbitration agreement provided by USC, that arbitration was the only possible way of resolving cases against USC. The arbitration agreement (Exibit 3) states: "*The parties agree that final and binding arbitration shall be the sole and exclusive remedy for resolving any claims covered by this Agreement, instead of any court action, which is hereby expressly waived.*"

H) Petitioner has spent the past year and a half struggling for survival and has only recently begun to study the law to represent themselves

**CONCLUSIONS**

A) There is not "voluntary bodily movement" nor "willfulness or intention" if the action made by the body and by the individual is not known by the individual making it. Petitioner's counsel made an action on behalf of Petitioner – i.e. filing the arbitration demand – without informing Petitioner of the content of the arbitration demand nor of the fact that the arbitration demand was being filed. Therefore, Petitioner's counsel has made an action "on behalf" of Petitioner in such a way that Petitioner made that action unconsciously and therefore not voluntarily nor willfully.

B) The arbitration demand, which has never been revised by Petitioner before its filing, represents a document that has not been approved by Petitioner and therefore has not been voluntarily filed by Petitioner, therefore the arbitration ongoing in JAMS does not represent Petitioner's will nor a legal proceeding voluntarily commenced by Petitioner.

C) The arbitration agreement concealed facts: that arbitration agreements can be challenged, therefore misinforming an immigrant with no knowledge on the US law nor of the US jurisdictional system. This, together with Petitioner's previous claims (Exibit 1 [sic]; errata corrige: Exhibit 1), further prove that the arbitration agreement is unenforceable because unconscionable and based on fraudulent misinformation and concealing of facts.

For all of the above, the action committed by Petitioner – filing the arbitration agreement in JAMS and not withdrawing it on time – cannot be considered voluntary.

The Arbitrator Lucky was aware of the above-mentioned information because it was similarly stated in Petitioner's request to remove the case from JAMS (Exhibit 1). Nonetheless, Arbitrator has not requested evidence to prove Petitioner's statements, and then has claimed that evidence was insufficient and used that as a reason to deny Petitioner's requests. Hence, the arbitrator has committed gross unfairness against Petitioner via the 2 rulings above listed, and therefore Petitioner requests a court order to vacate the rulings on (1) the denied request to remove the case from JAMS, (2) the denial to submit a request to appeal to the first ruling.

**3) ARBITRATOR'S ARGUMENT THAT PETITIONER WAIVED HER RIGHT TO REQUEST REMOVAL DEMONSTRATES ARBITRATORS GROSS UNFAIRNESS, FRAUD, AND MISCONDUCT**

**FACTS**

A) The Arbitrator states the following: *"Petitioner filed her Demand on November 21, 2021. She first requested removal of the Arbitration on June 16, 2023, almost 19 months later. Because Petitioner seeks to undo her own Demand for Arbitration over a year and a half after filing it, she has waived her right to challenge her own actions."*

B) "Waived" is defined by the law as "the act of voluntarily giving up a right"

C) As stated above, Petitioner was not aware of the commencement letter and of the rule defining the deadline to withdraw from arbitration, therefore Petitioner's failure at meeting the deadline cannot be considered a voluntary action

D) The legal definition of issued is "delivered to the party, unless otherwise defined"

E) JAMS doesn't define what issuance or issued mean, however, JAMS uses the word multiple times in its rules, with the meaning of "time in which the document is served".

Example 1: (i) After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

Example 2: The subpoena or subpoena duces tecum shall be issued in accordance with the applicable law.

Example 3: (a) At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

F) The Arbitrator fails at citing the JAMS's rules indicating the deadline to withdraw an arbitration demand, which are the following: *"Rule 13. Withdrawal from Arbitration: (a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration."*

G) Rule 13 doesn't specify the timeframe during which the arbitration demand can be withdrawn, and only mentions the moment in which the commencement letter is issued.

H) The moment in which the commencement letter has been served to Petitioner is February 2023. Indeed, Petitioner has received the commencement letter only on February 17th 2023, via email, from the case manager. Since then, Petitioner, as JAMS is aware, has begun looking for lawyers because the lack of legal knowledge did not allow Petitioner to make conscious – i.e. voluntary - actions in the case. Petitioner has become aware of the deadline set by Rule 13 only today (date of the current document in object) as indeed even the Arbitrator failed at informing Petitioner about the existence and meaning of Rule 13 in his ruling.

I) The Barkhordarian law firm has also concealed documents and important communications regarding the case in JAMS from Petitioner, while exchanging those documents with the other party via the opposite counsel, as demonstrated by the email exchange between the Barkhordarian law firm and the opposite counsel (emails can be provided upon request), and by the lack of email exchange with Petitioner

J)  Arbitrator (through JAMS) was aware that Petitioner did not have access to the JAMS portal before releasing the Barkhordarian law firm, and was aware that Petitioner had first received by JAMS the commencement letter in February 2023. Indeed, the only way for Petitioner of becoming aware of deadlines and documents exchanged between the parties (Defendants, JAMS, and Petitioner's counsel) was receiving those documents from those parties. None of the parties has shared with Petitioner the arbitration demand, nor the arbitrator's strike list filed to JAMS during the selection of the arbitrator, nor the commencement letter, nor the documents defining procedures and deadlines, nor the letter communicating the choosing of the arbitrator

K)  The commencement letter has been issued to the other party in February 2022, therefore, when Petitioner requested the removal of the case from JAMS, Petitioner was still 1 month earlier as compared to the other party's delay in filing the response to Petitioner's claims. Indeed, while the other party has been allowed by JAMS to file the response to Petitioner's claims 1 year and 5 months after the filing of the arbitration demand, Petitioner has filed the request to remove the case from JAMS:

   a.  1 year and 4 months after the issuance of the Commencement letter to Petitioner's previous counsel
   b.  less than 1 year after Petitioner had been given access to the JAMS portal
   c.  less than 4 months after Petitioner has received the Commencement letter from JAMS

**CONCLUSIONS**

A)  The filing of the arbitration demand cannot be considered "Petitioner's own request" by the law, because an own request is another way of saying a voluntary action. Because the filing of the arbitration demand has been perpetrated by the Barkhordarian law firm without Petitioner's approval, Petitioner has never filed the arbitration demand voluntarily and has instead been victim of misrepresentation

B)  The capability of properly and timely handling the case depended on being aware of the law, of the events, and of the deadlines

C)  Petitioner became unaware of the events when Petitioner started using the JAMS portal, a long time after releasing the Barkhordarian law firm. There cannot be voluntary action without consciousness regarding the events. Therefore, Petitioner has never waived the right to remove the case from JAMS

The Arbitrator was aware of those facts and has not considered those facts as evidence for the ruling over the request to remove the case from JAMS, demonstrating incompetence and/or committing gross unfairness against Petitioner. Therefore Petitioner requests to vacate the Arbitrator's ruling.

**4)  JAMS AND ITS ASSOCIATES HAVE DEMONSTRATED LACK OF NEUTRALITY AND GROSS UNFAIRNESS SINCE THE ARBITRATION DEMAND HAS BEEN FILED UNTIL CURRENT DATE, AND IN THE RULINGS HERE IN OBJECT**

JAMS and its associates (Arbitrator(s) and Case Managers) have:

(H)  first caused delays to the case, then used the untimeliness caused by those delays to reject Petitioner's requests, while refusing to consider untimeliness as a reason to deny

1  Respondent's actions, moves, and requests, and allowing Respondent's to be consistently and
2  persistently untimely damaging Petitioner:

    a.  JAMS has taken advantage of Petitioner's ignorance on the law, the struggle with the lack of employment caused by Respondent, and the PTSD caused by Respondents and by the Barkhordarian law firm, to allow the other party to submit a response to Petitioner's claims not 14 days, as indicated by JAMS rules, but 1 year and a half (04/07/2023) after the filing of the arbitration demand (11/16/2021): *Rule 9(c) Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have. JAMS may grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the Arbitrator.* Then, in the ruling in which the Arbitrator has denied Petitioner's request to remove the case from JAMS, the Arbitrator has used the "untimeliness" of Petitioner's request to remove the case from JAMS as reason to deny the request. Unlike Rule 9, which Arbitrator is expected to apply, JAMS rules do not define a timeline for the removal of the case from JAMS, just state the following: *Rule 13. Withdrawal from Arbitration: (a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.*" Arbitrator has used a strict definition of JAMS rules only against Petitioner, while has not applied at all, nor enforced, JAMS rules with Respondents. Indeed, there is no communication at all regarding JAMS soliciting the other party to file a response in compliance with Rule 9, meaning that JAMS has not even solicited the other party to file a response on time. In the ruling, regarding this point, Arbitrator stated: "*Respondent filed a Response on April 7, 2023. There is no Scheduling Order in the JAMS file, so this Arbitrator is unaware of how or why the Response was untimely filed under Rule 9(c).*"

    b.  After Petitioner requested to remove the case from JAMS on the 16th of June. The Case Manager and the Arbitrator have given Respondent a deadline (06/23/2023) to file the response to that motion. Respondent has filed the response on the 26th of June. No one has ever solicited them.

    c.  The Barkhordarian law firm has consciously and voluntarily, therefore fraudulently, filed a false because incorrect claim to JAMS: "wrongful constructive termination". The law firm was aware that Petitioner had been wrongfully terminated, and filed that claim while Petitioner was still employed at USC and had never given notice of resignation to USC nor ever talked about planning on resigning, therefore being aware that it was false and that it was incorrect. The wrongful termination claim has 2 years statute of limitation (05/27/2023), while most of the other claims file by Petitioner have 3 years of statute of limitation. By filing that wrong claim, the law firm consciously attempted at sabotaging the case preventing Petitioner from filing the correct claim on time. Petitioner has never been requested to revise the arbitration demand filed to JAMS and has received the document only on July 2022, after releasing the law firm. Petitioner wasn't aware that the claim was incorrect until one of the lawyers contacted by Petitioner while seeking for legal representation informed Petitioner. When Petitioner discovered that, and, ignoring the fact that a

removal of the case from JAMS was an option, attempted to request to JAMS to provide instructions on how to amend the arbitration demand or to file a new arbitration demand (04/19/2023). The case manager responded that the Arbitrator should have responded to that question, and therefore requested Petitioner to wait for the Arbitrator's response. However, to Petitioner's requests to waive the fees to file a new arbitration demand because of hardship (Petitioner is in extreme poverty and was fully unemployed at the time of that request) – fee waiving granted by the arbitration agreement signed by Petitioner with Respondent, to which JAMS had access – the case manager, on behalf of JAMS and of the arbitrator, responded that the fees could be reduced if Petitioner would qualify as a consumer. After days of unresponsiveness, Petitioner solicited the case manager both via email (04/20/2023, 04/25/2023) and via phone, and received no response to several emails, and then the same response via phone: that Petitioner was expected to wait for the Arbitrator to give an answer to that question before filing the correct claim. On the 12th of May, the first arbitrator, Rex Heeseman, communicated his recusal. On the 25th of May, Petitioner filed the case in State Court. Defendants in the case filed in Court on the 25th have been served with the summons and complaint on the 30th of May, therefore no one of the parties here involved was aware that Petitioner had been able to meet the statute of limitation by filing the case in Court. As of today, Petitioner's request to receive information on how to file a new arbitration Demand to JAMS has been left without a response by JAMS, by the Arbitrator, and by the Case Manager. Hence, if Petitioner had not filed the case in Court, JAMS actions and inactions would have resulted in the expiration of the statute of limitation, which would have irreparably damaged the case. On the 7th of June, JAMS appointed the new arbitrator, Jackson Lucky. JAMS left Petitioner without an arbitrator for the only important 2 weeks from the starting of a case that has until now lasted over 1 year and a half. Regarding this matter Arbitrator, in the ruling, stated: "*This Arbitrator has had no contact with the former arbitrator. This Arbitrator was appointed on June 7, 2023.*"

(I)   (Arbitrator) first prevented Petitioner from presenting evidence and holding hearings, then used that as reason to reject Petitioner's requests, then presented himself that very missing evidence in support of his own rejection of Petitioner's requests:

   a.   In Arbitrator's ruling denying the removal of the case from JAMS, the Arbitrator, in a brief document (3.5 pages, 6480 characters without spaces), states that evidence is insufficient and that, with the sole material presented, Petitioner's request fails substantively and procedurally. In that document, Arbitrator cites no evidence and doesn't cite any communication exchanged by Petitioner and JAMS.

   b.   In the Arbitrator's denial to appeal, a lengthier document (5.5 pages, 8321 characters without spaces), several emails exchanged by Petitioner with JAMS are cited by the Arbitrator and used against Petitioner, listed as evidence by the Arbitrator to deny the request to appeal, despite the same communications (happened before the ruling regarding the removal of the case), if admitted as evidence for the first ruling, would have demonstrated that (i) Petitioner had requested multiple times to provide evidence and had been ignored by the Arbitrator and by JAMS, (ii) Petitioner had requested to have a hearing in writing or otherwise, and had never waiver the right

1         to have a hearing, and (iii) had been constantly and persistently ignored and/or
2         misinterpreted by JAMS associates and by the Arbitrator.

3       c.   JAMS Rule 22 states the following: *"(d) Strict conformity to the rules of evidence is not*
4         *required, except that the Arbitrator shall apply applicable law relating to privileges*
5         *and work product. The Arbitrator shall consider evidence that he or she finds relevant*
6         *and material to the dispute, giving the evidence such weight as is appropriate. The*
7         *Arbitrator may be guided in that determination by principles contained in the Federal*
8         *Rules of Evidence or any other applicable rules of evidence; (h) When the Arbitrator*
9         *determines that all relevant and material evidence and arguments have been*
10       *presented, and any interim or partial Awards have been issued, the Arbitrator shall*
11       *declare the Hearing closed."* In accordance to Rule 22, it is the Arbitrator who decides
12       whether to request evidence or not. Petitioner has first not been requested to
13       provide evidence despite offering to do so, and then the lack of evidence has been
14       used by the Arbitrator to deny the removal of the case from JAMS, then, in the denial
15       to appeal, the Arbitrator has suddenly changed his mind regarding those same pieces
16       of evidence and decided to use those to deny the appeal.

17  (J)   first allowed the filing of the case by a lawyer who consistently takes on cases against USC
18      and/or in JAMS and then sabotages his clients - under the watch of JAMS - then have used the
19      fraudulent filing of the arbitration demand at the hands of that lawyer, fraud they were aware
20      of, to claim that Petitioner is "trying to undo her own actions" by requesting to remove the
21      arbitration demand (filed by the lawyers against Petitioner's will and without Petitioner's
22      awareness):

23       a.   The lawyers (Greg Wong and Heather Cox) have several cases in JAMS and related to
24         USC, as documented by JAMS in an attached document (Exhibit 3 [sic]; errata corrige:
25         Exhibit 4). Based on the number of cases those lawyers can humanely follow,
26         considering that the Barkhordarian law firm is a very small firm (approx. 5
27         employees), the Barkhordarian law firm follows almost exclusively cases in JAMS and
28         related to USC (Respondent). Based on Petitioner's experience, the two lawyers and
29         the law firm are colluded with USC and with JAMS, and consistently set their client's
30         cases to a settlement of $25,000, therefore doing the best interests of USC, heavily
31         damaging their clients, heavily manipulating their clients, causing extreme brain
32         damage and consequential financial, career, psychological, and emotional damage,
33         via gaslighting and finely designed manipulative strategies, to victims of horrific
34         abuses, consistently, persistently, systematically, and via a finely coordinated criminal
35         organization including several other law firms and arbitration institutions

36       b.   JAMS is aware of the above stated facts and has produced a document (Exhibit 3 [sic];
37         errata corrige: Exhibit 4) listing the cases involving those lawyers right after
38         Respondent (not JAMS) have been served with the case that Petitioner has filed in
39         Court, in which Petitioner has claimed that the lawyers were incompetent and/or
40         colluded, a document that Petitioner has not requested and that JAMS is not
41         supposed to provide unless requested, demonstrating that JAMS has exchanged ex-
42         parte communication with the other party.

43       c.   In the Request to remove the case from JAMS, Petitioner claimed that the lawyer who
44         has filed the case was either fraudulent or incompetent. Respondent's replied that

1   the lawyer was competent, without providing any evidence for it. The Arbitrator has
2   completely ignored Petitioner's claim that the lawyer was incompetent.
3   d.   The Arbitrator has used the filing of the case, perpetrated by those lawyers, as an
4        argument to state that Petitioner is trying to undue an action that Petitioner has
5        voluntarily perpetrated: filing the arbitration demand in JAMS
6   (K)  approved frivolous requests from Respondents aimed at damaging Petitioner's possibility of
7        properly following and winning the case, without second thoughts and responding
8        immediately, while wrongfully rejecting 2 Petitioner's requests and responding only after
9        Petitioner solicited due to getting closer to the deadline for the request to appeal
10  a.   On June 16th Petitioner requested to remove the case from JAMS. After almost a
11       month, JAMS hadn't responded yet to Petitioner's request.
12  b.   In the meantime, Petitioner provided additional arguments and claims, and
13       Respondents provided their counter arguments to each and every document that
14       Petitioner has filed.
15  c.   On July 6th (almost a month after the request was filed by Petitioner) JAMS requested
16       Petitioner to schedule a hearing, and Petitioner, in response, requested a special
17       accommodation for the PTSD and the lack of legal education: requested to provide
18       the information needed by the Arbitrator, to gather which the hearing was
19       supposedly necessary, in writing instead of in a video/phone/in-person hearing, and
20       to receive the agenda of the hearing in order to be able to read all the applicable laws
21       in advance.
22  d.   JAMS never provided the requested information and waited until Respondent
23       requested Petitioner to withdraw the request to remand the case to State Court in
24       exchange for the approval of the removal of the case from JAMS. Petitioner refused,
25       and Respondent and Petitioner attempted instead at settling the case.
26  e.   Respondent then requested to the Arbitrator to delay the ruling over the request to
27       remove the case from JAMS to 45-60 days later (07/12/2023), in order to allow the
28       Federal Court to rule over the motion to remand (or not) the case to State Court. The
29       two motions mentioned by Respondent were independent from one another, and the
30       only reason to wait was obviously a frivolous tactic meant to play a strategy against
31       Petitioner.
32  f.   The Arbitrator immediately approved Respondent's request to delay the ruling
33       (responding less than 1 hour after receiving it). Candice Zee (counsel) (7/12/2023
34       09:33 am) "*This message is in response to JAMS's request to schedule a hearing on
35       Ms. Crupi's request to withdraw the matter from JAMS. Ms. Crupi has also filed a case
36       in state court, which USC removed to federal court with the intent to file a petition to
37       compel arbitration (and let the court know of the pending JAMS action). Ms. Crupi
38       filed a Motion for Remand in the district court last week, and a hearing has been set
39       for August 7. USC recommends and requests that JAMS continue the hearing/issue
40       raised here in JAMS for 45 to 60 days pending the Motion for Remand in district court.
41       USC would like some time to determine whether or not it wants to continue to enforce
42       the arbitration agreement to keep the matter in JAMS (if they decide to agree to
43       withdraw, then Ms. Crupi's request here will be moot). The Parties may also try and
44       engage in settlement negotiations as well.*" Arbitrator (7/12/2023 10:17 am): "*Dear*

*Ms. Zee, Thank you for your message. I think waiting for six weeks or so makes sense. The District Court's ruling, your settlement talks, or your client's agreement to withdraw from arbitration may resolve the issues raised in the request tot withdraw. Unless Dr. Crupi objects, I'll check back with the parties in about six weeks on August 21, 2023. Thank you. Jack Lucky"*

g.  Petitioner immediately requested the Arbitrator to instead proceed with the ruling and offered to provide additional information (i.e. evidence) if deemed necessary.

h.  Meanwhile, Respondent, which had left the settling negotiation pending, for which the latest email had been sent by Petitioner and was waiting for an answer, delayed the response regarding the settling until Petitioner solicited, to then immediately reject Petitioner's settling proposal (07/14/2023).

i.  Petitioner solicited the Arbitrator (07/17/2023) and the Arbitrator rejected the request to remove the case from JAMS (07/18/2023).

C)  voluntarily requested hearings on:

a.  21st of April: day in which Petitioner had been falsely reported as unprofessional via an extremely abusive and traumatic constructed incident, then used to terminate Petitioner by Respondent

b.  the 17th of July, day of Petitioner's failed marriage's anniversary

Petitioner has timely responded to JAMS, to the other counsel, throughout the whole duration of the case, and has often been forced to solicit response from JAMS, an arbitration institution which should prioritize the timely resolution of its cases, especially considering that the reason to use arbitration instead of court is to speed up the resolution of the case as compared to court (emails and communications can be provided upon request). It is JAMS responsibility to properly communicate and information among their employees and associates, to solicit the party who is delayed, to not admit untimely filed documentation, and to apply the same rules with all parties involved.

The Arbitrator has used 2 different metrics to judge Petitioner's (Claimant/Plaintiff) and Respondent's (USC) actions and their procedural and substantive effectiveness and legitimacy throughout the whole duration of the case and in the ruling.

In addition, despite the evidence conveniently int5roduced by the Arbitrator only in the denial to appeal to the first ruling went against his own ruling, the Arbitrator failed at providing that conclusion, committing and admitting to incompetence and/or fraud via misrepresentation of facts.

The Arbitrator has committed incompetence and/or has lied in the ruling, therefore committing fraud via misrepresentation of facts. Arbitrator: "Petitioner is now representing herself. There is no substitution of counsel in the JAMS file, so this Arbitrator is unaware of when or how she became self-represented." In February 2023, Ashley Rodriguez, in an email sent to Petitioner, states the following: "*A party is not required to retain counsel to proceed with arbitration. The initial Arbitration Management Conference (AMC) call was initially postponed while the parties were discussing a settlement <u>and then again once your prior counsel advised they were no longer working on this matter to provide you additional time to retain counsel if you wanted.</u>*" Therefore, JAMS was aware that Petitioner was without counsel and in pro se, and has received communication about it from the Barkhordarian lawfirm in July 2022, but in the ruling the Arbitrator stated that JAMS has no record regarding Petitioner being in pro se.

1  For all the above, the Arbitrator has committed and admitted fault and has also accused the case manager
2  and JAMS of negligence, of fraud, and of damaging the case against Petitioner.

3  As a natural consequence of what above concluded, Petitioner cannot be held hostage in JAMS, a forum
4  that Petitioner has not voluntarily chosen and that has been chosen by a lawyer, related to and associated
5  with JAMS and USC, via fraud. Keeping the case in JAMS would violate Petitioner's most basic human
6  rights, constitutional rights, civil rights, and public policy.

7  In addition, the arbitration agreement signed by Petitioner which indicated JAMS as the only arbitration
8  institution allowed, also stated the following: "*Employee's share of the arbitrator's fee and the JAMS filing*
9  *fee shall be no more than the then-current filing fee in the California Superior Court (or the equivalent state*
10 *court in the event the arbitration is initiated outside California). The arbitrator may grant a waiver of*
11 *Employee's share of these fees upon a showing of hardship*." Petitioner has obtained waiving of all the
12 court's fees, because Petitioner has been reduced to extreme poverty (condition of hardship) therefore
13 JAMS fees, including the potential fees to file an appeal, must be reduced to zero.

14 **For all the above, Petitioner requests to:**

15   **1) vacate the ruling denying the removal of the case from JAMS**
16   **2) vacate the ruling denying the appeal**
17   **3) order JAMS to remove the case from JAMS**

22  Annunziata Crupi, PhD

23  NAME: ANNUNZIATA CRUPI

24  SIGNATURE_____

25  DATE_____08/21/2023_____

26  ADDRESS: 3711 Mentone Ave, apt 19, Los Angeles, 90034

27  +1 (424) 230 6547

ANNUNZIATA CRUPI
3711 MENTONE AVE APT 19
LOS ANGELES 90034
(424) 230 6547
NANCY CRUPI 1986 @ gmail.com
Plaintiff in pro per

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 18 2023

David W. Slayton, Executive Officer/Clerk of Court

1
2
3
4

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

5
6
7

ANNUNZIATA CRUPI

Plaintiff,

vs.

JAMES, JACKSON LUCKY

Defendant(s)

Case No.: 23STCP 03048
ADDENDUM:
ARBITRATION   AGREEMENT

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

September 18th
2013

*Rev. July 2019*

**AGREEMENT TO ARBITRATE CLAIMS**

Internal processes are available for collegially resolving differences that may arise between the University of Southern California (the "University") and its faculty or staff, including formal faculty grievance and staff complaint procedures. If, for whatever reason, internal collegial processes do not resolve such differences, final and binding impartial arbitration is a means of avoiding the delay, expense, and unpleasantness of a lawsuit.

Therefore, the University and the faculty or staff member named below ("Employee") agree to the resolution by arbitration of all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee. Any claim that otherwise would have been decidable in a court of law — whether under local, state, or federal law — will instead be decided by arbitration, except as specifically excluded by this Agreement. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for "whistleblowing" or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

Notwithstanding the foregoing, the following claims are not covered by this Agreement: (1) claims brought under Title VII of the Civil Rights Act of 1964; (2) tort claims (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention) if they are related to or arising out of sexual assault or sexual harassment; (3) claims for workers' compensation or unemployment compensation; (4) claims by or against faculty that are subject to review by writ of administrative mandamus under California Code of Civil Procedure Section 1094.5 or any successor statute; (5) claims that are arbitrable under a collective bargaining agreement governing Employee's employment; (6) claims arising under the National Labor Relations Act; and (7) claims that as a matter of law (after application of Federal Arbitration Act preemption principles) may not be subject to a predispute agreement to arbitrate.

The parties agree that final and binding arbitration shall be the sole and exclusive remedy for resolving any claims covered by this Agreement, instead of any court action, which is hereby expressly waived.

Any arbitration conducted pursuant to this Agreement shall be held in Los Angeles, California (or in the city in which the Employee is or was employed by the University). Any arbitration pursuant to this Agreement shall be held under the auspices of JAMS, and conducted in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), except to the extent such rules conflict with the procedures set forth herein. The JAMS Employment Arbitration Rules & Procedures are currently available at http://www.jamsadr.com/rules-employment-arbitration, and Employee understands USC will provide a printed copy upon request. Employee's share of the arbitrator's fee and the JAMS filing fee shall be no more than the then-current filing fee in the California Superior Court (or

*Rev. July 2019*

the equivalent state court in the event the arbitration is initiated outside California). The arbitrator may grant a waiver of Employee's share of these fees upon a showing of hardship. Employee and the University shall each bear their own costs relating to the arbitration and their own attorneys' fees, except as otherwise provided by law and as set forth in this Agreement. This Agreement supersedes any prior or contemporaneous agreement on the subject, shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the "Agreement to Arbitrate Claims" and is signed by the President of the University.

Employee or the University must give written notice of any claim to the other party within the time prescribed by the state or federal statute of limitations applicable to the claim being made. Any claim for which notice is not given within the time prescribed by the applicable state or federal statute of limitations, shall be barred. The written notice shall identify and factually describe the nature of all claims asserted, and in case of notice to the University, it shall be directed to the Provost (for faculty) or the Senior Vice President for Administration (for staff).

Notwithstanding any provision of the JAMS Rules, arbitration shall occur on an individual basis only, and a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the formation, validity, or enforceability of this Agreement.  Thus, to the maximum extent permitted by law, Employee hereby waives any right to bring on behalf of persons other than Employee, or to otherwise participate with other persons in, any class or collective action. Employee retains the right to bring claims in arbitration for himself or herself as an individual (and only for himself or herself).

The arbitrator shall award all the remedies to which the prevailing party is legally entitled, including attorneys' fees and/or litigation costs if recoverable under applicable law. The arbitrator may not, however, award remedies that would be unavailable in court under the legal standards applicable to the claim(s) asserted. The arbitrator shall afford the parties adequate discovery, including deposition discovery, taking into account their shared desire to have a fast, cost-effective dispute-resolution mechanism. The Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act either is inapplicable, or held not to require arbitration of a particular claim or claims, California law pertaining to agreements to arbitrate shall apply. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. The arbitrator shall render an award and a written, reasoned opinion in support thereof. Judgment on the award may be entered in any court having jurisdiction thereof.

*Rev. July 2019*

This Agreement shall not be interpreted to preclude Employee from filing (or recovering through) an administrative charge or complaint with, or communicating in any way with, the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, the California Division of Labor Standards Enforcement, the National Labor Relations Board, or any other federal, state, or local agency or official. If any provision of this Agreement is determined to be void or otherwise unenforceable, this determination shall not affect the validity of the remainder of the Agreement.

Employee understands and agrees that by signing this agreement, he/she and the University are giving up their respective rights to a jury trial.

Date: 01/06/2021

By: _____
Employee's signature

Annunziata Crupi
Full name of employee

By: _____
Carol L. Folt, President
University of Southern California

3