**VEDDER PRICE (CA), LLP**
Candice T. Zee (SBN 227453)
czee@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, CA 90067
T: +1 424 204 7700
F: +1 424 204 7702
Peter Walrod (SBN 339521)
pwalrod@vedderprice.com
1 Post Street, Suite 2400
San Francisco, CA 94104
T: +1 415 749 9500
F: +1 415 749 9502

Attorneys for Defendants
UNIVERSITY OF SOUTHERN
CALIFORNIA, VALTER LONGO,
SEBASTIAN BRANDHORST, and WENDY
SNAER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANNUNZIATA CRUPI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California corporation and a private Academic Institution, VALTER LONGO, an individual, SEBASTIAN BRANDHORST, an individual, WENDY SNAER, an individual and DOES 1 through 100, inclusive.<br><br>Defendants. | Case No. 2:23-cv-05077-GW-PDx<br><br>**NOTICE OF AMENDED MOTION AND AMENDED MOTION TO COMPEL ARBITRATION AND DISMISS BY DEFENDANTS UNIVERSITY OF SOUTHERN CALIFORNIA, VALTER LONGO, SEBASTIAN BRANDHORST, AND WENDY SNAER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION**<br><br>Date:        February 15, 2024<br>Time:        8:30 a.m.<br>Judge:       Hon. George H. Wu<br>Courtroom:   9D |

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

TO PLAINTIFF APPEARING PRO PER: Please take notice that on February 15, 2024 at 8:30 a.m., or as soon after as the Court may hear it, in Courtroom 9D, 9th Floor of the above-entitled court located at United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Defendants University of Southern California, Valter Longo, Sebastian Brandhorst, and Wendy Snaer ("Defendants") will, and hereby do, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, move this Court for an order compelling Plaintiff Annunziata Crupi ("Plaintiff") to submit her claims in this lawsuit to arbitration and to dismiss Plaintiff's complaint.

Defendants base this Motion on the grounds that Plaintiff entered into a binding arbitration agreement that covers the claims at issue in this lawsuit, which must be enforced according to its terms under the FAA, and that Plaintiff has already initiated an arbitration proceeding on related claims almost two years ago against the University of Southern California, which remains pending with JAMS. *See Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1619 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2010).

Defendants further base this Motion in the pleadings and papers on file with this Court, this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support, the Declarations of Wendy Snaer, Kedra Ishop, and Peter Walrod, and the Request for Judicial Notice filed concurrently, any oral argument allowed by the Court concerning this Motion, and such other matters as may be considered by the Court.

/ / /

/ / /

/ / /

/ / /

1    This motion is made following the conference of counsel pursuant to Local
2  Rule 7-3 which took place on October 16, 2023.

3
4  Dated:      January 18, 2024          VEDDER PRICE (CA), LLP

5
6  By: /s/ Peter Walrod
            Peter Walrod

7  Attorneys for Defendants
8  UNIVERSITY OF SOUTHERN
   CALIFORNIA, VALTER LONGO,
9  SEBASTIAN BRANDHORST, and
   WENDY SNAER

DEFENDANT'S NOTICE OF AMENDED MOTION AND AMENDED MOTION TO COMPEL ARBITRATION AND DISMISS

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................... 9
II.   BACKGROUND ............................................................................ 10
      A.  The Arbitration Agreement .............................................. 10
      B.  Plaintiff's Filed a Demand for Arbitration on November 19,
          2021 .................................................................................. 10
      C.  Defendants USC, Longo, Brandhorst And Snaer ............. 11
      D.  The Arbitration Agreement .............................................. 12
      E.  Plaintiff's Lawsuit Asserts Claims Covered By The Arbitration
          Agreement ......................................................................... 14
      F.  Plaintiff Consented To, But Then Refused (And Continues To
          Refuse) To Arbitrate ........................................................ 15
III.  ARGUMENT ................................................................................ 16
      A.  The FAA Strongly Favors Arbitration And Applies To This
          Case .................................................................................. 16
      B.  A Valid And Enforceable Agreement Governs Plaintiff's Claims..... 17
          1.  A Valid Arbitration Agreement Exists ..................... 18
          2.  The Arbitration Agreement Covers the Claims in this
              Lawsuit .................................................................. 19
          3.  Plaintiff Refused to Honor Her Arbitration Agreement ........... 20
      C.  The Arbitration Agreement Is Not Unconscionable ........... 21
          1.  The Arbitration Agreement Is Not Procedurally
              Unconscionable ..................................................... 21
          2.  The Arbitration Agreement Is Not Substantively
              Unconscionable ..................................................... 22
              a.  The Arbitration Agreement Provides for a Neutral
                  Arbitrator ..................................................... 23
              b.  The Arbitration Agreement Provides for Adequate
                  Discovery ...................................................... 23
              c.  The Arbitration Agreement Requires a Written
                  Award ........................................................... 24
              d.  The Arbitration Agreement Provides Adequate
                  Remedies ....................................................... 24
              e.  The Arbitration Agreement Imposes No
                  Unreasonable Costs ........................................ 25
      D.  To The Extent The Court Finds Any Part Of The Arbitration
          Agreement Unconscionable, The Court Should Sever Any
          Unconscionable Provision And Enforce The Remainder Of The
          Agreement ......................................................................... 25
      E.  The Court Should Dismiss This Action .............................. 25
IV.   CONCLUSION .............................................................................. 26

VEDDER PRICE P.C.
ATTORNEYS AT LAW
DALLAS

Case No. 2:23-cv-05077-GW-PDx
MEMORANDUM OF POA ISO AMENDED MOTION TO COMPEL ARBITRATION AND DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal.4th 83 (2000)..............................................................................*passim*

*Asmus v. Pacific Bell*,
  23 Cal. 4th 1 (2000)......................................................................................... 19

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2010) ...............................................................................*passim*

*AT&T Technologies, Inc. v. Communications Workers of America*,
  475 U.S. 643 (1986) ........................................................................................ 19

*Beard v. Santander Consumer USA, Inc.*,
  Case No. 1:11-cv-11-1815 LJO-BAM, 2012 WL 1292576 (E.D.
  Cal. Apr. 16, 2012) .......................................................................................... 23

*Burnett v. Macy's West Stores Inc.*,
  2011 WL 4770614 (E.D. Cal. 2011) ............................................................... 23

*Century Bank v. St. Paul Fire & Marine Ins. Co.*,
  4 Cal. 3d 319 (1971) ........................................................................................ 18

*Chau v. EMC Corporation*,
  No. C-13-04806-RMW, 2014 WL 842579 (N.D. Cal., Feb. 28,
  2014) ................................................................................................................ 24

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ........................................................................................ 17

*Craig v. Brown & Root*,
  84 Cal. App. 4th 416 (2000) ........................................................................... 19

*Cronus Investments, Inc. v. Concierge Services*,
  35 Cal. 4th 376 (2005) .................................................................................... 17

*Donovan v. RRL Corp.*,
  26 Cal. 4th 261 (2001) .................................................................................... 18

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Epic Systems Corp. v. Lewis*,
  138 S.Ct. 1612 (2018) ............................................................................. 2

*Fleming v. Weather Shield Mfg., Inc.*,
  No. EDCV18-00589-GW(KKX), 2018 WL 6010365 (C.D. Cal.
  May 14, 2018) .......................................................................................... 21

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ................................................................................. 16

*Jersey v. John Muir Med. Ctr.*,
  97 Cal. App. 4th 814 (2002) ................................................................... 22

*Kilgore v. Keybank Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) ................................................................ 21

*Kinney v. United Healthcare Servs., Inc.*,
  70 Cal. App. 4th 1322 (1999) ................................................................. 21

*Legatree v. Luce, Forward, Hamilton, & Scripps LLP*,
  74 Cal. App. 4th 1105 (1999) ................................................................. 22

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
  363 F.3d 1010 (9th Cir. 2004) ........................................................... 17, 19

*Marin Storage & Trucking, Inc. v. Benco Contracting and
  Engineering, Inc.*,
  89 Cal. App. 4th 1042 (2001) ................................................................. 18

*McMannus v. CIBS World Mkts. Corp.*,
  109 Cal. App. 4th 76 (2003) .............................................................. 21, 22

*Molina v. Scandinavian Designs, Inc.*,
  No. 13-CV-04256 NC, 2014 WL 1615177 (N.D. Cal. Apr. 21,
  2014) ....................................................................................................... 25

*Oguejiofor v. Nissan*,
  Case No. C-11-0544 EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2,
  2011) ....................................................................................................... 23

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ................................................................ 9, 10

*Perry v. Thomas*,
    482 U.S. 483 (1987) ........................................................................ 16

*Pope v. Sonatype, Inc.*,
    No. 5:15-CV-00956-RMW, 2015 WL 2174033 (N.D. Cal., May 8,
    2015) ........................................................................................... 24

*Ramirez v. LQ Mgmt., L.L.C.*,
    No. 219CV06507ODWJPRX, 2020 WL 2797285 ........................... 17

*Roman v. Superior Court*,
    172 Cal. App. 4th 1462 (2009) ...................................................... 24

*Ruhe v. Masimo Corp.*,
    Case No. SACV 11-00734-CJC-(JCGx), 2011 WL 4442790 (C.D.
    Cal. Sept. 16, 2011) ...................................................................... 23

*Sanchez v. Gruma Corporation*,
    No. 19-CV-00794-WHO, 2019 WL 1545186 (N.D. Cal. Apr. 9,
    2019) ........................................................................................... 24

*Sparling v. Hoffman Const. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ................................................... 25, 26

*Sweeney v. Tractor Supply Company*,
    390 F. Supp. 3d 1152 (N.D. Cal. 2019) .......................................... 24

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ....................................................... 21

*Valle v. DTZ Gov't Servs., Inc.*,
    No. CV 17-02175-GW (SKX), 2017 WL 11702568 (C.D. Cal. June
    8, 2017) ........................................................................................ 25

*Victorola 89, LLC v. Jaman Props 8 LLC*,
    46 Cal. App. 5th 337 (2020) .......................................................... 17

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996) ......................................................... 18

**Statutes**

9 U.S.C.

    § 1 ...................................................................................................... 2, 16

    § 2 ...................................................................................................... 9, 21

    § 4 ................................................................................... 17, 18, 19, 20

15 U.S.C. § 1125 .................................................................................... 15

15 U.S.C. § 1125(a) .............................................................................. 15

18 U.S.C. § 1028 .................................................................................... 14

Cal. Civ. Code

    § 1550 ..................................................................................... 18

    § 1565 ..................................................................................... 18

    § 1633.7 .................................................................................. 18

    § 1633.9 .................................................................................. 18

    § 1670.5(a) .............................................................................. 25

Labor Code § 970-972 ......................................................................... 15

Labor Code § 1102.5 ............................................................................ 14

Labor Code § 1709-1710 ..................................................................... 15

U.S. Code § 1832 .................................................................................. 15

**Other Authorities**

2 C.F.R. § 200.400(f) ........................................................................... 14

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

On January 6, 2021, Plaintiff Annunziata Crupi ("Plaintiff") agreed to arbitrate the claims that she asserted against University of Southern California ("USC"), Valter Longo ("Longo"), Sebastian Brandhorst ("Brandhorst"), and Wendy Snaer (collectively, the "Defendants"), and in so doing, waived any right to pursue her claims in court.  On November 19, 2021, Plaintiff confirmed this agreement by demanding arbitration against USC.  Plaintiff initiated an arbitration, which is now currently pending.  Now, over a year and a half later, Plaintiff has filed a second lawsuit against Defendants in court.

Plaintiff's arbitration agreement is indisputably valid and enforceable. Further, it governs all of her claims, and mandates arbitration of those claims.  Thus, despite her refusal to honor her agreement, the Federal Arbitration Act ("FAA") requires Plaintiff to arbitrate her claims. The FAA provides that all arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Case law confirms that the FAA reflects a strong federal policy favoring the enforceability of arbitration agreements.  Plaintiff's arbitration agreement and her action of filing her claims in an earlier filed arbitration proceeding are no exception.  Plaintiff's arbitration agreement is valid and enforceable with respect to all of her claims (both those currently set forth in her Complaint, and claims which may be added pursuant to Plaintiff's recently filed request for leave to amend).

Accordingly, pursuant to the FAA, Defendants move this Court for an order enforcing the Parties' arbitration agreement, compelling Plaintiff's claims to arbitration, as required under the FAA.  Further, because there is already an earlier filed arbitration pending, Defendants request that this Court dismiss Plaintiff's Complaint under the first to file rule.  *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 97 (9th Cir. 1982) (court can dismiss second-filed complaint.)

## II.    BACKGROUND

### A.    The Arbitration Agreement

On June 15, 2018, Plaintiff was hired as a Postdoctoral Scholar – Research Associate. (Declaration of Wendy Snaer in Support of Motion to Compel Arbitration ("Snaer Decl."), ¶ 5.) Plaintiff signed arbitration agreements with USC on May 23, 2018, December 17, 2018, and December 22, 2018. (Snaer Decl., ¶ 12, Ex. J; ECF No. 2, pp. 79; 86-88; 95-97; 106-107.)

On January 6, 2021, Wendy Snaer ("Snaer"), the Senior Human Resources Partner and Payroll Manager for the USC School of Gerontology, sent a one-year reappointment offer letter to Plaintiff and requested her to review the documents and provide a signed copy. (*Id.* at ¶¶ 2, 8.) That same day, Plaintiff sent an email to Snaer in which she stated "[p]lease find here the signed docs." (*Id.*, ¶ 9, Ex. A) Attached to Plaintiff's email was an executed copy of the arbitration agreement (hereinafter, the "Agreement"), bearing Plaintiff's signature and the date January 6, 2021. (*Id.* at ¶¶ 9, 10, Exs. A, B[1].) The Agreement is attached to Plaintiff's Complaint. (See, ECF No. 2 at 99-101.) The offer letter, which was issued to Plaintiff simultaneously with the Agreement (and was also signed by her), expressly states that the offer is contingent upon Plaintiff's acceptance of an arbitration agreement. (Snaer Decl. at Ex. A.)

The Agreement was then uploaded to Plaintiff's digital personnel file, only modifiable by Snaer and other members of USC's human resources department. (*Id.* at ¶¶ 7, 11.)

On March 28, 2022, Plaintiff's contract expired and was not renewed by USC.

### B.    Plaintiff Filed a Demand for Arbitration on November 19, 2021

Plaintiff's litigation against USC began almost two years ago, when on November 19, 2021, Plaintiff, who was represented by counsel, served USC with a Demand for Arbitration. (*See*, Declaration of Peter Walrod in Support of Defendants'

---

[1] Exhibit B is the Agreement separated from the cover email (Ex. A) for reference.

Amended Motion to Compel Arbitration ("Walrod Decl."), ¶ 2, Ex. C.)  The claims in her Demand for Arbitration and the claims in her Complaint both arise from her employment relationship with USC.  (*Id*.)  Plaintiff's Demand for Arbitration included a copy of the Agreement which Defendants now seek to enforce.  (*Id*.)

For over a year, Plaintiff did not object to arbitration.  (*Id*. at ¶ 4.)  In fact, in or around July, 2022, Plaintiff and USC mutually agreed to continue the arbitration proceedings to engage in settlement discussions.  (*Id*.)  However, on August 2, 2022, Plaintiff parted ways with her counsel.  (*Id*. at ¶ 5.)

From August 2022, until February, 2023, Plaintiff refused to participate in the Judicial Arbitration and Mediation Services ("JAMS") proceeding that she initiated.[2] (*Id*. at ¶ 6, Ex. D.)  The Arbitrator[3] set a scheduling conference for April 21, 2023; Plaintiff requested to continue the conference to June to give her time to find new counsel.  (*Id*. at ¶ 8, Ex. E.)  The Arbitrator granted her request.  (*Id*.)

On May 25, 2023, Plaintiff, representing herself in pro per, filed a second complaint against USC in Los Angeles Superior Court ("Civil Court Complaint"), adding Longo, Brandhorst and Snaer as defendants.  (*Id*. at ¶ 10.)  Plaintiff's Civil Court Complaint alleged the same first two causes of action for wrongful termination and whistleblower retaliation that Plaintiff had filed in arbitration, and pled several additional causes of action and legal theories, also arising out of Plaintiff's employment relationship with USC.  (*Id*.)

On June 26, 2023, USC removed the case from state court.  (*Id*.)  On July 5, 2023, Plaintiff filed a Motion for Remand.  While the remand motion was pending, JAMS briefly stayed the pending arbitration while the parties resolved the federal court complaint. (*Id*.)  On September 21, 2023, this Court denied Plaintiff's Request for Remand.  (*Id*.)  JAMS held a scheduling conference on December 14, 2023.

---

[2] When USC attempted to re-initiate the arbitration, Plaintiff requested that counsel for USC and JAMS staff "please stop stalking me."  (Walrod Decl.,  ¶ 6, Ex. D.)
[3] On May 12, 2023, the Parties' Arbitrator recused himself from the proceedings, and on June 7, 2023, JAMS appointed Judge Jackson Lucky as a replacement.  (*Id*.  at ¶¶ 9, 11.)

Plaintiff did not attend the conference.   The Arbitrator continued the scheduling conference to March 20, 2024.  (*Id*.)

On October 11, 2023, Plaintiff filed a motion seeking leave to amend her complaint.  (ECF No. 64), and on October 16, 2023, Plaintiff filed a second motion seeking remand of this matter.  (ECF No. 65.)  Plaintiff sought to dismiss the third, sixth, and eleventh causes of action, and to recharacterize her fourth, fifth and seventh causes of action as purportedly arising under state, and not federal law.  (*Id*.)  On November 8, 2023, the Court granted Plaintiff's request.  (ECF No. 78.)  The Court gave Plaintiff three weeks to file an amended complaint, setting a deadline of November 23, 2023.  (*Id*.)  On November 20, 2023, Plaintiff requested the Court to extend this deadline for numerous reasons.  (ECF No. 82.)  The Court granted this request, and continued the deadline to file an amended complaint to January 16, 2024. (ECF No. 83.)[4]

On January 15, 2024, Plaintiff filed her Amended Complaint (ECF No. 103) and a Third Motion for Remand (ECF No. 104).

**C.    Defendants USC, Longo, Brandhorst and Snaer**

USC is a private research university which serves a student body of more than 47,000 undergraduate and graduate students.  (Declaration of Kedra Ishop in Support of Defendants' Motion to Compel Arbitration ("Ishop Decl."), ¶ 3.)  USC attracts students from throughout the United States and abroad.  (*Id*.)   There were approximately 3,772 students in USC's 2023 entering first-year class. (*Id*.)  Of these students, 58% of the students reside outside of California, and 13% of the students reside outside the United States.  (*Id*.)

USC provides undergraduate and graduate education on two different campuses in Los Angeles and maintains educational programs around California and

---

[4] In the interim, Plaintiff submitted numerous filings, including moving for sanctions and to renew her motion for remand.  *See, e.g.* ECF Nos. 85, 86, 89, 90, 94, 95, and 100.  All of these filings were stricken by the Court.  See, e.g., 88, 93, 99, and 102.

1   in Washington, D.C., as well as fellowship opportunities throughout the United

2   States. (*Id*.)

3          In addition to in-person instruction, USC offers a wide variety of online

4   courses taught by faculty geographically located inside and outside of California to

5   students throughout the United States, including over 90 online masters level degree

6   programs.  Even before the global pandemic, over 7,000 graduate students took at

7   least some portion of their courses online, with most of those students pursuing

8   degrees exclusively through distance education. (*Id*.)

9          Longo, a Professor of Gerontology and Biological Science, Brandhorst, a

10  Research Assistant Professor of Gerontology, and Snaer, Senior Human Resources

11  Partner and Payroll Manager, are all employees of USC.  (Snaer Decl., ¶¶ 2-4.)

12  Longo, Brandhorst and Plaintiff have collaborated with out-of-state research teams

13  during the course of their research.  (*See e.g.*, Complaint, ¶ 11 [Longo and Plaintiff

14  worked on hypertension trial in research partnership with entity based in Nashville,

15  Tennessee.].)

16       **D.    The Arbitration Agreement**

17       Under the arbitration agreement, Plaintiff and USC each agreed to:

18       [T]he resolution by arbitration of all claims, whether or not arising out

19       of Employee's University employment, remuneration or termination,

20       that Employee may have against the University or any of its related

21       entities, including but not limited to faculty practice plans, or its or their

22       officers, trustees, administrators, employees or agents, in their capacity

23       as such or otherwise; and all claims that the University may have

24       against Employee.   Any claim that otherwise would have been

25       decidable in a court of law — whether under local, state, or federal law

26       — will instead be decided by arbitration, except as specifically

27       excluded by this Agreement.

28       (Snaer Decl., ¶ 10, Ex. B at p. 1.)

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The Agreement also requires Plaintiff to arbitrate claims brought against USC employees.  (*See* Snaer Decl., Ex. B at p. 1 (". . . against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee . . .").)

The Agreement also provides a non-exclusive list of covered claims:

> The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for "whistleblowing" or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

(*Id.*)

As to the conduct of the arbitration, the Agreement incorporates JAMS Employment Arbitration Rules & Procedures (the "JAMS Rules") with some modifications in the Agreement.  (*Id.*)  Under the Agreement, Plaintiff is responsible only for the then-current filing fee in the California Superior Court (*Id.*), and, indeed, only paid $250 at the commencement of the previously initiated arbitration.  (Walrod Decl., ¶ 2.)  USC is responsible for the rest of the cost.  (Snaer Decl., Ex. B at p. 1.) The Agreement expressly states that the arbitrator can award "all the remedies to which the prevailing party is legally entitled, including attorneys' fees and/or litigation costs if recoverable under applicable law."  (*Id.* at p. 2.)  The JAMS Rules provide that the arbitration shall be conducted by one neutral arbitrator, unless the parties agree otherwise.  (Request for Judicial Notice in Support of Defendants'

Amended Motion to Compel Arbitration ("RJN"), ¶ 1, Ex. I at p. 7.)

The Agreement also requires the arbitrator to "afford the parties adequate discovery, including deposition discovery…". (Snaer Decl., Ex. B at p. 2.)  The JAMS Rules give the arbitrator wide discretion to regulate discovery necessary to a full and fair exploration of the issues in the dispute. (RJN, Ex. I at p. 9-10 at Rules 16, 17.)

The Agreement provides that "The Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings pursuant to this Agreement." (Snaer Decl., Ex. B at p. 2.)

Finally, both the Agreement and the JAMS Rules require that the arbitrator issue a written award after the hearing.  (*Id*.; RJN, Ex. I at p. 13 at Rule 24(h).)

### E.    Plaintiff's Lawsuit Asserts Claims Covered By The Arbitration Agreement

Plaintiff's Amended Complaint purports to bring the following claims against Defendants:

(1) Whistleblowing Retaliation in Violation of [California] Labor Code § 1102.5; (2) Wrongful Termination in Violation of Public Policy; (4)[5] Breach of contract in violation of California State law and USC's policies; (5) Misappropriation of Trade Secrets in violation of CACI No. 4401; (7) Violation of California Labor Code and California State Constitution; (8) Fraudulent inducement of employment in violation of Labor Code § 970-972 Code § 1709-1710; (9) Fraud in employment in violation of Civil Code (10) Solicitation of employment via false advertising in violation of California Business and Professions Code; (12) Civil Conspiracy in violation of the Restatement (Third) of Torts; and (14) Intentional and Negligent Infliction of Emotional Distress in violation of Tort law and Civil Rights.

(ECF No. 103).

### F.    Plaintiff Consented to, but Then Refused (and Continues to Refuse) to Arbitrate

Just under two years ago on November 19, 2021, Plaintiff chose to litigate her claims against USC in arbitration.  (Walrod Decl., ¶ 2, Ex. C.)  Plaintiff gave no indication that she objected arbitration until February, 2023.  (*Id*. at ¶ 4.)  Since then, she has made numerous spurious attempts to escape her contractual obligation to arbitrate: (1) starting in or around April, 2023, Plaintiff has refused to participate in three attempts by JAMS staff to coordinate arbitration scheduling conferences (*Id.* at ¶ 6, 8, 16; Exs. D, E, G); (2) Plaintiff filed a "removal" from the arbitration, an "informal appeal", and a "petition to vacate", all of which were considered and denied by the arbitrator (*see*, *e.g.*, *id.* at ¶ 13, Ex. F [parties' briefing on Plaintiff's request to "remove" from arbitration]; (3) a separate state court action[6] including a "Petition to Vacate Arbitration Award [sic]…" filed while the JAMS arbitration was still pending (*Id.* at ¶ 17); and (4), this action.

On October 16, 2023, Defendants, in an email, reminded Plaintiff of her agreement to arbitrate.  (*Id.* at ¶ 19, Ex. H.)  On October 17, Defendants and Plaintiff met telephonically.  (*Id.* at ¶ 19.)  Plaintiff still refused to honor her contractual obligation.  (*Id.* at ¶ 19.)

## III.   ARGUMENT

### A.    The FAA Strongly Favors Arbitration and Applies to This Case

The FAA was enacted in response to widespread judicial hostility to arbitration agreements.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010).  The "principal purpose" of the FAA is to ensure that private arbitration agreements are enforced according to their terms.  *Id.* at 344.  Because arbitration is a highly favored means of settling disputes, the United States Supreme Court has held that arbitration

---

[6] Despite the fact that this was filed in early August, 2023, Plaintiff gave no notice whatsoever of these proceedings until the September 20, 2023 filing in this Court. (Walrod Decl.,  ¶ 17.)

agreements "must be rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987).  In *Concepcion*, the Supreme Court vigorously emphasized that the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, *supra,* 563 U.S. at 346.

The FAA governs the enforceability of written arbitration provisions in contracts involving interstate commerce.  *See* 9 U.S.C. § 1, *et seq*.; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991).  Such contracts include employment contracts*.  Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001).  Parties may also affirmatively agree to have the FAA govern their arbitration agreements.  *See Cronus Investments, Inc. v. Concierge Services*, 35 Cal. 4th 376, 394 (2005) (parties not precluded from expressly designating that arbitration should move forward under the FAA); *Victorola 89, LLC v. Jaman Props 8 LLC*, 46 Cal. App. 5th 337, 355 (2020) (parties may voluntarily elect to have FAA govern agreement); *Ramirez v. LQ Mgmt., L.L.C.*, No. 219CV06507ODWJPRX, 2020 WL 2797285, at fn.3 (C.D. Cal. May 29, 2020) (holding that the FAA applies "based on the Agreement's express invocation of the FAA and the nature of Ramirez's employment".).

The FAA unquestionably applies to this case as it involves a contract related to Plaintiff's employment.  Moreover, USC engages in interstate commerce by having a substantial population of students from other states and other countries, having multiple campuses in different states, and by offering remote classes across state and national boundaries.  (*See e.g.*, Ishop Decl., at ¶¶ 3-6.)  One example interstate commerce in this case is of Plaintiff engaging in research involving a team located in Nashville, Tennessee.  (Complaint, ¶ 11.)  Furthermore, the Agreement expressly states that the FAA governs the Agreement.  (Snaer Decl., Ex. B at p. 2.) Thus, the FAA applies to this case, and its policy in favor of enforcing arbitration agreements supports granting Defendants' Motion.

1

**B.      A Valid and Enforceable Agreement Governs Plaintiff's Claims**

When deciding a motion to compel arbitration under the FAA, the district court must determine: (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement encompasses the dispute at issue.  *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  If the answer is yes to both questions, the Court must enforce the arbitration agreement.  *Id*.  And a party seeking to compel arbitration must also show that the other party refused to honor the agreement to arbitrate before filing a motion to compel arbitration. 9 U.S.C. § 4.  Because Defendants meet these requirements, the Court should compel Plaintiff to arbitrate her claims against Defendants.

**1.      A Valid Arbitration Agreement Exists**

In determining the existence of an arbitration agreement, courts look to general state-law contract principles while giving due regard to federal policy favoring arbitration.  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). Under California law, an essential element of any contract is mutual assent. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001) (citing Cal. Civ. Code §§ 1550, 1565).  Mutual assent usually consists of an offer and acceptance.  *Id.* at 270-71. Notably, it is objective criteria that determines mutual assent, not one party's subjective intent.  *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal. App. 4th 1042, 1050 (2001).  The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement.  *Id*.  Signatures reflect an intent to be bound by an agreement. *Century Bank v. St. Paul Fire & Marine Ins. Co.,* 4 Cal. 3d 319, 327 (1971).

Notably, in the context of electronic agreements, a signature cannot be denied legal effect or enforceability solely because it is in electronic form.  Cal. Civ. Code § 1633.7.  An electronic record or electronic signature is attributable to a person if it was the act of the person.  Cal. Civ. Code § 1633.9(a).  And, the act of the person may be shown in any manner.  *Id*.

Here, not only did Plaintiff sign the Agreement, she attached it to an email and represented that it was signed by her. (Snaer Decl., Ex. A.)  As a result, there can be no dispute that Plaintiff expressly agreed to submit her employment-related claims to final and binding arbitration.  She also executed and agreed to three prior arbitration agreements. (*Id.* at Ex. J; ECF No. 2, pp. 79; 86-88; 95-97; 106-107.)

Even if Plaintiff had not expressly accepted the terms of the arbitration agreement, the agreement is still enforceable given her implied acceptance of it.  It is well-established that an agreement to arbitrate can be implied-in-fact where the employee's continued employment constitutes her acceptance of an agreement proposed by her employer. *Craig v. Brown & Root*, 84 Cal. App. 4th 416, 420 (2000) (citing *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 11 (2000).).  By continuing to work for USC after the arbitration agreement was presented to her, she also impliedly agreed to the terms of the arbitration agreement.  The offer letter, which was issued to Plaintiff simultaneously with the Agreement (and was also signed by her), expressly states that the offer is contingent upon Plaintiff's acceptance of an arbitration agreement.  Since Plaintiff continued her employment after being presented with the arbitration agreement and being informed that it was mandatory, she impliedly agreed to it by continuing to work for USC.  Plaintiff cannot escape her agreement to arbitrate.

## 2. The Arbitration Agreement Covers the Claims in this Lawsuit

As noted above, to compel arbitration, the moving party must also show that the Agreement covers the dispute in question. *Lifescan, Inc.*, *supra,* 363 F.3d at 1012; 9 U.S.C. § 4.  Any doubt as to whether a particular dispute falls within the arbitration agreement must be resolved in favor of sending claims to arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Here Plaintiff's claims for relief fall squarely within the Agreement.  Indeed, the Agreement covers all legal disputes related to Plaintiff's employment and

Plaintiff herself initiated the current and pending arbitration.  (Snaer Decl., Ex. B. at p. 1.)  All of the claims are expressly named in the Agreement's scope.  (*See e.g.*, *id*. [scope of agreement includes claims for "wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort" and "claims for 'whistleblowing' or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance."].)

Additionally, Plaintiff's claims against Longo, Brandhorst and Snaer all are expressly covered by the Agreement.  (*See id*.  [Arbitration agreement scope includes claims ". . . against the University or any of its related entities, including but not limited to faculty practice plans, *or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise*; and all claims that the University may have against Employee . . .". (emphasis added)].)  It is undisputed[7] that Longo, Brandhorst and Snaer were all employees of USC at all relevant times, and thus the claims against them are also subject to arbitration.

Therefore, Plaintiff's claims fall within the scope of the Agreement.  As a result, the Court should grant Defendants' Motion.

### 3.      Plaintiff Refused to Honor Her Arbitration Agreement After Initiating Arbitration Two Years Ago

A party seeking to compel arbitration must also show a refusal to arbitrate by the opposing party.  9 U.S.C. § 4.  Since February 7, 2023, when Plaintiff began attempting to avoid her contractual obligations, she has manifested a clear and unambiguous refusal to honor the Agreement.  This is in spite of the fact that she herself initiated the first lawsuit in arbitration, and *attached the very arbitration agreement* she now refuses to honor.  Plaintiff has, in addition to objecting in arbitration (*see* Walrod Decl., Ex. F.), refused to participate in the arbitration (*See e.g.*, *Id.* at ¶¶ 6; 8, 16, Exs. D; E [requesting delay of scheduling conference]; G

---

[7] Plaintiff, in fact, alleges that Longo, Brandhorst and Snaer were and are employed at USC.  (*See* Complaint, ¶ 2.)

1 [deeming scheduling conference "unnecessary"]), filed a spurious state court claim

2 seeking to vacate the Arbitrator's denial of her unilateral request to exit the

3 arbitration, and filed this action. Plaintiff has manifested her intent not to honor the

4 Agreement which she, ironically, invoked in her original demand.

5      Additionally, Defendants further requested that Plaintiff submit her claims to

6 arbitration. (*Id*., ¶ 19, Ex. H.) Plaintiff, however, has refused to comply with

7 Defendants' request. Accordingly, Defendants meet their burden on this element.

8      **C.    The Arbitration Agreement Is Not Unconscionable**

9      The FAA requires enforcement of an arbitration agreement unless grounds

10 exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2; *Fleming v.*

11 *Weather Shield Mfg., Inc.*, No. EDCV18-00589-GW(KKX), 2018 WL 6010365, at

12 *3 (C.D. Cal. May 14, 2018) (*citing Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022

13 (9th Cir. 2016), "The text of the FAA makes only one exception to the validity of an

14 arbitration agreement: the savings clause in § 2 provides that a court may strike or

15 limit an arbitration provision on 'such grounds as exist at law or in equity for the

16 revocation of any contract'"); *Kilgore v. Keybank Nat'l Ass'n*, 718 F.3d 1052, 1058

17 (9th Cir. 2013). The savings clause preserves generally applicable contract defenses

18 such as unconscionability, so long as those doctrines are not applied in a fashion that

19 disfavors arbitration. *Concepcion*, *supra,* 563 U.S. at 341.

20      Importantly, under the FAA, courts may not invalidate arbitration agreements

21 under state laws applicable only to arbitration contracts. *Id.* at 341. Nor may they

22 apply traditional contract defenses, such as unconscionability, in a broader or more

23 stringent manner to invalidate arbitration agreements and destroy the FAA's purpose

24 to ensure that private arbitration agreements are enforced according to their terms.

25 *Id*. at 344. When a state law prohibits outright the arbitration of a particular type of

26 claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.

27 *Id*. at 341.

28      The party resisting enforcement of an arbitration agreement must show that the

agreement is both procedurally and substantively unconscionable. *McMannus v. CIBS World Mkts. Corp.*, 109 Cal. App. 4th 76, 87 (2003). As set forth below, Plaintiff cannot establish either requirement.

### 1. The Arbitration Agreement Is Not Procedurally Unconscionable

For an agreement to be procedurally unconscionable, there must be an element of "oppression" or "surprise." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 96-97 (2000); *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). Significantly, arbitration agreements are not invalid simply because they are imposed as a condition of employment. *See, Legatree v. Luce, Forward, Hamilton, & Scripps LLP*, 74 Cal. App. 4th 1105, 1122-23 (1999); *Jersey v. John Muir Med. Ctr.*, 97 Cal. App. 4th 814, 824 (2002).

Here, there is no evidence of surprise or oppression. Plaintiff has articulated no reason as to why she believes the document is procedurally unconscionable. Nor can she. The offer letter that she signed specifically called out the arbitration agreement to Plaintiff, informing her that the offer was contingent on her acceptance of an arbitration agreement. (Snaer Decl., Ex. A.) Additionally, she was provided with an arbitration agreement that was a stand-alone document labeled "Agreement to Arbitrate Claims." (*Id*.) She had to open the document in order to review and sign it, as she did. (*Id*.) And Plaintiff herself represented that she signed the Agreement. (*Id*.) Plaintiff can make no credible claim of oppression or surprise. And, as a result, Plaintiff cannot demonstrate this element of unconscionability.

### 2. The Arbitration Agreement Is Not Substantively Unconscionable

An arbitration agreement will not be deemed unenforceable unless it is also substantively unconscionable. *McMannus, supra,* 109 Cal. App. 4th at 87. Substantive unconscionability focuses on the terms of an agreement and whether they produce "overly harsh" or "one-sided" results. *Armendariz, supra,* 24 Cal. 4th at 114. Under California law, employment arbitration agreements must provide: (1) a

neutral arbitrator; (2) adequate discovery; (3) a written award; (4) all remedies available in court; and (5) not require the employee to pay unreasonable forum costs. *Id*. at 102.

As noted above, under *Concepcion*, courts may not invalidate arbitration agreements under state law applicable only to arbitration contracts. *Concepcion*, *supra,* 563 U.S. at 341. The *Armendariz* standard applies only to arbitration contracts. Thus, it should not apply in this case.[8] But, even if *Armendariz* applies, the Agreement still satisfies all of these elements.

### a. The Arbitration Agreement Provides for a Neutral Arbitrator

The Agreement provides for the selection of an arbitrator pursuant to the "then-current JAMS employment arbitration rules." (*Id.* at Ex. B, p. 2.) In turn, the JAMS Rules require that "[t]he Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise." (emphasis added). (RJN, ¶ 1, Ex. I, p. 6 at Rule 7(a).) Additionally, the JAMS Rules have a neutral selection process from a panel of potential arbitrators where both parties provide input. (*Id.* at p. 8 at Rule 15.)

Therefore, the Agreement satisfies this element.

### b. The Arbitration Agreement Provides for Adequate Discovery

Parties involved in arbitration are "at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents

---

[8] Several courts have called *Armendariz* into question after *Concepcion*. *See Beard v. Santander Consumer USA, Inc.*, Case No. 1:11-cv-11-1815 LJO-BAM, 2012 WL 1292576 at *9 (E.D. Cal. Apr. 16, 2012) (compelling arbitration and stating that "courts have questioned *Armendariz*'s continuing viability after *Concepcion*," and relying on cases that hold *Concepcion* abrogated *Armendariz*); *Oguejiofor v. Nissan*, Case No. C-11-0544 EMC, 2011 WL 3879482 at *3 (N.D. Cal. Sept. 2, 2011)(compelling arbitration; noting that *Armendariz* was abrogated in part by *Concepcion*); *Ruhe v. Masimo Corp.*, Case No. SACV 11-00734-CJC-(JCGx), 2011 WL 4442790 at *2 (C.D. Cal. Sept. 16, 2011) (compelling arbitration; concluding that *Concepcion* would preempt *Armendariz* if it is a separate set of requirements for arbitration agreements); *Burnett v. Macy's West Stores Inc.*, Case No. 1:11-cv-01277 LJO SMS, 2011 WL 4770614 at *4 n.3 (E.D. Cal. Oct. 7, 2011)(compelling arbitration; noting that a "few courts have questioned the vitality of the [*Armendariz*] requirements in light of the United States Supreme Court's decision in [*Concepcion*]").

and witnesses, as determined by the arbitrator(s)." *Armendariz*, 24 Cal. 4th at 106. The Agreement states that "[t]he arbitrator shall afford the parties adequate discovery, including deposition Discovery". (Snaer Decl., Ex. B at p. 2.)  The Agreement further comports with this requirement because the JAMS Rules apply, and those rules provide for adequate discovery.  The JAMS Rules provide for an exchange of documents, witnesses, and at least one deposition (with an option for the arbitrator to permit more), allow the arbitrator to modify the discovery permitted, and do not provide an express limitation on any other kind of discovery.  (RJN, ¶ 1, Ex. I, pp. 9-10 at Rules 16 and 17.)

Indeed, numerous courts have found the JAMS Rules and similar arbitration providers provide for sufficient discovery.  *See, e.g.*, *Sweeney v. Tractor Supply Company*, 390 F. Supp. 3d 1152, 1161 (N.D. Cal. 2019); *Sanchez v. Gruma Corporation*, No. 19-CV-00794-WHO, 2019 WL 1545186, at *8 (N.D. Cal. Apr. 9, 2019); *Pope v. Sonatype, Inc.*, No. 5:15-CV-00956-RMW, 2015 WL 2174033, at *5 (N.D. Cal., May 8, 2015); *Chau v. EMC Corporation*, No. C-13-04806-RMW, 2014 WL 842579, at *5 (N.D. Cal., Feb. 28, 2014); *see also Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1476 (2009) ("There appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules, certainly not the role of the arbitrator in controlling the extent of actual discovery permitted.") Therefore, this element is met.

### c.   The Arbitration Agreement Requires a Written Award

An enforceable arbitration agreement must also provide for a written award. *Armendariz*, *supra,* 24 Cal. 4th at 102.  The Agreement requires the issuance of a written award. (Snaer Decl. at Ex. B, at p. 2.)  The JAMS Rules do as well.  (RJN Ex. I, p. 13 at Rule 24(h).)  Thus, the Agreement also meets this requirement.

### d.   The Arbitration Agreement Provides Adequate Remedies

Enforceable arbitration agreements must also allow all remedies that would be

otherwise available in court.  *Armendariz*, *supra,* 24 Cal. 4th at 102.  Here, the Agreement expressly states that the arbitrator "shall award all the remedies to which the prevailing party is legally entitled, including attorneys' fees and/or litigation costs if recoverable under applicable law." (Snaer Decl., Ex. B, p. 2.)  Thus, the Agreement meets this element as well.

### e. The Arbitration Agreement Imposes No Unreasonable Costs

Under *Armendariz*, an arbitration agreement cannot generally require the employee to bear any type of expense that the employee would not be required to bear if they were free to bring the action in court.  *Armendariz*, *supra,* 24 Cal. 4th at 111-12.  Under the Agreement, Plaintiff is only responsible for paying "no more than the then-current filing fee in the California Superior Court." (Snaer Decl., Ex. B, p. 1.)  USC is responsible for the remainder of the filing fee, any administrative fees in connection with the arbitration, and the arbitrator's fees and expenses.  (*Id*.)  Since the employee does not bear any additional expenses for participating in arbitration, the Agreement satisfies this element as well.

Notably, Plaintiff paid a modest $250 filing fee on or around when she initiated the pre-filed arbitration in November 19, 2021.  (Walrod Decl., ¶ 2.)

### D. If the Court Finds Any Part of the Agreement Unconscionable, the Court Should Sever Any Unconscionable Provision and Enforce the Remainder of the Agreement

If the court finds any clause of the contract to be unconscionable, the court may enforce the remainder of the Agreement without the unconscionable clause.  Cal. Civ. Code § 1670.5(a); *Armendariz*, *supra,* 24 Cal. 4th at 121-22.  In making this determination, the court looks at whether unconscionable terms are the "purpose" of the Agreement.  *Armendariz*, *supra,* 24 Cal. 4th at 121-22.  Here, none of the Agreement's provisions are unconscionable.  Plaintiff has pointed to none. Nevertheless, to the extent that the Court finds any provision to be unconscionable, the Court should sever that provision and enforce the rest of the Agreement.

**E.    The Court Should Dismiss This Action**

Where all the claims are arbitrable, as here a district court may dismiss the action.  *Valle v. DTZ Gov't Servs., Inc.*, No. CV 17-02175-GW (SKX), 2017 WL 11702568, at *2 (C.D. Cal. June 8, 2017) (citing *Molina v. Scandinavian Designs, Inc.*, No. 13-CV-04256 NC, 2014 WL 1615177, at *2 (N.D. Cal. Apr. 21, 2014); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).  As discussed above, Plaintiff must arbitrate her claims.  Plaintiff initiated an arbitration herself, but now refuses to participate.  Therefore, the Court should also dismiss this action.

## IV.    CONCLUSION

No valid basis exists to deny Defendants' Motion.  Plaintiff executed a binding arbitration agreement that covers the claims at issue in this case, and herself initiated an arbitration before JAMS.  Plaintiff must submit her claims to arbitration.  Moreover, the arbitration agreement is not unconscionable as it easily meets the requirements of *Armendariz*.  Thus, the Court should grant Defendants' Motion, order Plaintiff to submit her claims to arbitration, and dismiss this action.

Dated:        January 18, 2024            VEDDER PRICE (CA), LLP


By:  */s/ Peter Walrod*
        Peter Walrod

Attorneys for Defendants
UNIVERSITY OF SOUTHERN
CALIFORNIA, VALTER LONGO,
SEBASTIAN BRANDHORST, and
WENDY SNAER

1

## L.R. 11-6.2 Certification

I, the undersigned counsel of record for Defendants University of Southern California, Valter Longo, Sebastian Brandhorst, and Wendy Snaer, certifies that this brief contains 5,715 words, which complies with the world limit of L.R. 11-6.1.

Dated:        January 18, 2024                    VEDDER PRICE (CA), LLP


By: _/s/ Peter Walrod_
     Peter Walrod

Attorneys for Defendants
UNIVERSITY OF SOUTHERN
CALIFORNIA, VALTER LONGO,
SEBASTIAN BRANDHORST, and
WENDY SNAER