**Vedder Price (CA), LLP**
Candice T. Zee (SBN 227453)
czee@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 424 204 7700
F:  +1 424 204 7702
Peter Walrod (SBN 339521)
pwalrod@vedderprice.com
1 Post Street, Suite 2400
San Francisco, CA 94104
T: +1 415 749 9500
F: +1 415 749 9502

Attorneys for Defendants
UNIVERSITY OF SOUTHERN
CALIFORNIA, VALTER LONGO,
SEBASTIAN BRANDHORST, and WENDY
SNAER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANNUNZIATA CRUPI, an Individual, | Case No.: CV 23-5077-GW-PDx |
| Plaintiff, | **DECLARATION OF PETER WALROD IN SUPPORT OF UNIVERSITY OF SOUTHERN CALIFORNIA'S, VALTER LONGO'S, SEBASTIAN BRANDHORST'S, AND WENDY SNAER'S AMENDED MOTION TO COMPEL ARBITRATION AND DISMISS** |
| v. | |
| UNIVERSITY OF SOUTHERN CALIFORNIA, a California Corporation and a Private Academic Institution; VALTER LONGO, an Individual; SEBASTIAN BRANDHORST, an Individual; WENDY SNAER, an Individual; and DOES 1 through 100, inclusive, | |
| Defendants. | Date:      February 15, 2024<br>Time:      8:30 a.m.<br>Judge:    Hon. George H. Wu<br>Courtroom:  9D |

VEDDER PRICE P.C.
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 2:23-cv-05077-GW-PDx
DECLARATION OF PETER WALROD IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL
ARBITRATION AND DISMISS

I, PETER WALROD, declare as follows:

1.      I am an attorney admitted to practice in the State of California and am an Associate with the law firm of Vedder Price (CA), LLP, counsel of record for Defendants University of Southern California ("USC"), Valter Longo ("Longo"), Sebastian Brandhorst ("Brandhorst"), and Wendy Snaer ("Snaer") in this action. All of the information set forth herein is based on my personal and firsthand knowledge or based on information and documents retained in the regular course of business, and if called and sworn as a witness, I could and would competently testify thereto.

2.      On November 19, 2021, Plaintiff Annunziata Crupi ("Plaintiff") served USC with a Demand for Arbitration.  This Demand for Arbitration included a copy of an arbitration agreement executed by Plaintiff on January 6, 2021. Plaintiff paid a $250 filing fee to initiate the arbitration.  Plaintiff was represented by counsel at this time.  The Demand for Arbitration stated allegations and causes of actions relating to Plaintiff's employment at USC.  A true and correct copy of the Demand for Arbitration is attached hereto as **Exhibit C**.

3.      Pursuant to this Demand for Arbitration, a Judicial Arbitration Management Services ("JAMS") case (Reference No. 5220000062) was opened. As of October 19, 2023, it is still pending.

4.      For over a year after initiating arbitration against USC, Plaintiff, who was represented by counsel at the time, did not object to the arbitration.  In fact, in or around July, 2022, Plaintiff and USC mutually agreed to continue the arbitration proceedings to engage in settlement discussions.

5.      On August 2, 2022, Plaintiff's counsel informed USC that his office was no longer representing Plaintiff.

6.      On October 19, 2022, I emailed JAMS to reinitiate the arbitration. However, Plaintiff objected to this and stated "Ashley please be informed that the

VEDDER PRICE P.C.
ATTORNEYS AT LAW
SAN FRANCISCO

2                                   Case No. 2:23-cv-05077-GW-PDx
DECLARATION OF PETER WALROD IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL
ARBITRATION AND DISMISS

arbitration can only be initiated upon request by the party who submitted the claims, i.e. myself, and I am still collecting evidences to decide whether to go to arbitration and/or how to negotiate the case." Plaintiff also requested that both counsel for USC, and the JAMS staff, to "please stop stalking me." A true and correct copy of this email exchange is attached hereto as **Exhibit D**.

7. From the time Plaintiff parted ways with her counsel, until in or around February, 2023, she refused to participate in the arbitration.

8. The then Arbitrator Rex Heeseman ("Heeseman") set a scheduling conference for April 21, 2023. However, Plaintiff requested that the conference be rescheduled. The scheduling conference was continued at Plaintiff's request. A true and correct copy of Plaintiff's email requesting to reschedule the conference is attached hereto as **Exhibit E**.

9. On May 12, 2023, Heeseman recused himself from the proceedings.

10. On May 25, 2023, Plaintiff filed a second complaint against USC in California state court, adding Longo, Brandhorst and Snaer as defendants. This complaint alleged the same first two causes of action, for wrongful termination and whistleblower retaliation, as did the Demand for Arbitration. But, this second complaint also added additional causes of action and legal theories, also arising out of Plaintiff's employment relationship with USC.

11. On June 7, 2023, JAMS appointed Judge Jackson Lucky as a replacement arbitrator.

12. On June 26, 2023, USC removed the state court case to federal court. On July 5, 2023, Plaintiff filed a motion to remand, setting a hearing for August 8, 2023. The hearing was later continued to September 21, 2023. The Arbitrator briefly stayed the action during the pendency of the removal proceedings.

13. On June 16, 2023, Plaintiff filed a "removal" from the arbitration, which in essence was a unilateral request to withdraw from the arbitration. In this

VEDDER PRICE P.C.
ATTORNEYS AT LAW
SAN FRANCISCO

3                    Case No. 2:23-cv-05077-GW-PDx
DECLARATION OF PETER WALROD IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL
ARBITRATION AND DISMISS

removal she made numerous assertions about why she should not be bound by the arbitration agreement.  On June 30, USC filed a letter in opposition to her request.  On June 30, Plaintiff filed a reply, to which USC filed a surreply on July 3.  Arbitrator Lucky denied Plaintiff's request on July 18, 2023.  True and correct copies of Plaintiff's request, USC's opposition, the reply and surreply are attached hereto as **Exhibit F**.

14.     On July 25, 2023, Plaintiff posted a message in the JAMS messaging portal that she requested an "appeal" of Arbitrator Lucky's July 18 decision.  On July 26, 2023, Arbitrator Lucky denied this "informal" request by Plaintiff to reconsider his decision.

15.     On July 27, 2023, Plaintiff filed a "petition to vacate" the arbitration with JAMS; this was denied on August 17, 2023.

16.     On August 2, 2023, JAMS sought to schedule an arbitration conference and asked about the parties' availability.  Plaintiff stated that this conference was "unnecessary" and refused to provide her availability.  A true and correct copy of Plaintiff's message is attached hereto as **Exhibit G**.

17.     On September 20, 2023, Plaintiff filed a document entitled "Petition Filed to State Court for Judicial Notice"  Upon further investigation, it turned out that Plaintiff had initiated another state law action seeking to "vacate" the denials of her motions, naming JAMS as a party.  Plaintiff had provided no notice of the existence of these proceedings.

18.     On Saturday, October 7, 2023, Plaintiff asked me if "[a]re you available for a call early next week?"  During this meeting, which took place on October 9, 2023, Plaintiff stated her intention to seek leave to amend her complaint to remove the federal causes of action, in an effort to secure a remand of this litigation to state court.  On October 11, 2023, at 5:16 pm, Plaintiff filed her motion seeking leave to amend her complaint.

VEDDER PRICE P.C.
ATTORNEYS AT LAW
SAN FRANCISCO

4                     Case No. 2:23-cv-05077-GW-PDx
DECLARATION OF PETER WALROD IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL
ARBITRATION AND DISMISS

19.     On October 16, 2023, I sent an email reminding Plaintiff of her obligation to arbitrate her claims.  On October 17, 2023, I met with Plaintiff telephonically.  She continued to refuse to submit her claims to arbitration.  A true and correct copy of the email I sent to Plaintiff is attached hereto as **Exhibit H**.

20.     On October 31, 2023, the Arbitrator in the JAMS proceeding held a status conference.  At the status conference, the Arbitrator continued the scheduling conference to December 14, 2023.  Plaintiff did not attend the scheduling conference on December 14, 2023.  The Arbitrator continued the scheduling conference to March 20, 2024.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 18th day of January, 2024, at San Francisco, California.

/s/ Peter Walrod
PETER WALROD

VEDDER PRICE P.C.
ATTORNEYS AT LAW
SAN FRANCISCO

5                           Case No. 2:23-cv-05077-GW-PDx
DECLARATION OF PETER WALROD IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL
ARBITRATION AND DISMISS

# EXHIBIT C

Received

NOV 1 9 2021

Office Of The General Counsel

**GREGORY P. WONG (SBN: 204502)**
**HEATHER K. COX (SBN: 278898)**
**BARKHORDARIAN LAW FIRM, PLC**
6047 Bristol Parkway, Second Floor
Culver City, CA 90230
Telephone: (323) 450-2777
Facsimile: (310) 215-3416
Email: Heather@barklawfirm.com

**Attorneys for Claimant**
**ANNUNZIATA CRUPI**

**JAMS**

| | |
|---|---|
| ANNUNZIATA CRUPI, an Individual, | **CASE NO.:** |
| Claimant, | **COMPLAINT FOR:** |
| vs. | 1. **Whistleblower Retaliation in Violation of Labor Code § 1102.5; and** |
| UNIVERSITY OF SOUTHERN CALIFORNIA, a Non-Profit Corporation; and DOES 1 through 100, inclusive, | 2. **Wrongful Constructive Termination in Violation of Public Policy.** |
| Respondents. | |

1

COMPLAINT

Claimant ANNUNZIATA CRUPI (hereinafter "Claimant") alleges and states as follows:

**PARTIES**

1.     Claimant ANNUNZIATA CRUPI at all times relevant herein, was, and is, an individual residing in the County of Los Angeles, State of California.

2.     Claimant is informed and believes, and thereon alleges that Respondent UNIVERISTY OF SOUTHERN CALIFORNIA (hereinafter "Respondent" or "USC") is and was a California Non-Profit Corporation doing business in Southern California, and Claimant is informed and believes, and thereon alleged that USC regularly employed five or more persons at all relevant times to this action.

3.     Claimant is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of the Respondents sued herein under fictitious names Does 1 through 100, inclusive, and for that reason sues said Respondents, and each of them, by such fictitious names.   Claimant is informed, believes, and thereupon alleges that each of the Respondents Does 1 through 100, inclusive, is and was in some manner responsible for, participated in, or contributed to the matters and things of which Claimant complains herein, and in some fashion, has legal responsibility therefore. When Claimant ascertains the names and capacities of the fictitiously named Respondents Does 1 through 100, inclusive, Claimant will seek leave to amend this Complaint to set forth such facts.

4.     Claimant is informed, believes, and there upon alleges that each Respondents is, and at all times relevant herein was, the agent of his, her, or its co-Respondents, and in committing the acts alleged herein, was acting within the scope of his, her, or its authority as such agent, and with the knowledge, permission, and consent of his, her, or its co-Respondents.

5.     Hereinafter USC and DOES 1 through 100, collectively, will be known as "Respondents."

**FACTS COMMON TO ALL CAUSES OF ACTION**

6.     Respondents are engaged on higher education and research which awards academic degrees in several academic disciplines.  On or around June 2018, Claimant was hired

as a Postdoctoral Scholar – Research Associate. Throughout Claimant's employment, she has submitted over three patents and two clinical projects.

7.   Throughout 2020 to the present, Claimant and Valter D. Longo, Respondent's Chair of the Gerontology Department and Claimant's faculty mentor, were working on a clinical trial to be published. As a first author, Claimant was and is heavily invested on the development of this study which includes data research, to which Claimant has to report to Mr. Longo.

8.   In or around December 2, 2020, during the last stages before the journal's first review, Mr. Longo requested Claimant to include misleading information to which Claimant declined to do. Shortly thereafter, Mr. Longo started a series of retaliatory actions against Claimant.

9.   On or around December 8, 2020, Claimant received an email wherein Mr. Longo threatened to not renew her H-1B visa that was agreed to be renewed by the Senior Human Resources Partner, Wendy Snaer.

10.   Claimant continued to receive orders from Mr. Longo to include the misleading research despite Claimant's voiced concerns with the data. On or around March 2021, Claimant made a formal complaint with the National Institute of Health (NIH) and Respondent's Human Resources about this conduct.

11.   On or around April 21, 2021, Claimant received an email from Ms. Snaer stating Mr. Longo and his assistant professor alleged claims of Claimant's conduct of resisting using misleading data causing a hostile work environment. This complaint was investigated by Ms. Snaer.

12.   On or around May 27, 2021, Ms. Snaer asked all parties to attend to a recorded zoom meeting to discuss ways to communicate moving forward with the study which appeared disingenuous as Claimant was also informed that her contract would not be reappointed by Respondents and with no opportunity to move to a different position. Claimant is informed and believes that such decision was taken as a retaliation towards her complaints.  Claimant's current contract will expire on March 28, 2022.

## **FIRST CAUSE OF ACTION**

### **(Whistleblower Retaliation – Claimant against All Respondents)**

13.     Claimant refers to and incorporates herein by reference the above paragraphs as though fully set forth herein.

14.     Pursuant to Labor Code section 1102.5, California employees are protected from retaliatory discharge for disclosing suspected violations of state or federal law to a person with authority over the person or to a person with the authority to investigate, discover or correct the violation.

15.     Here, Claimant made known her concerns about research manipulation. Right after, Claimant was retaliated by receiving a counter-complaint which was immediately investigated and also Respondents did not extend Claimant's contract well before her contract was to expire.

16.     Respondents' conduct was wrongful and violates Labor Code section 1102.5.

17.     As a direct, foreseeable, and proximate result of Respondents' retaliatory actions, Claimant has suffered and continues to suffer substantial losses in earnings and job benefits, all to her damage herein in an amount not less than the minimal jurisdiction amount of this court, the precise amount of which will be proven at arbitration.

18.     Claimant is informed and believes, and based thereon alleges, that she is entitled to reinstatement and payment of a civil penalty not to exceed $10,000.00 pursuant to Labor Code section 1102.5.

19.     Claimant is informed and believes, and based thereon alleges, that as a further direct and proximate result of the acts alleged herein, Claimant has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, emotional and physical distress, pain and suffering, and has been generally damaged in an amount to be determined at arbitration.

20.     Claimant is informed and believes, and based thereon alleges, that Respondents willfully engaged in the conduct alleged herein with malice, fraud, and oppression, without excuse or justification, and with the specific intent to injure Claimant for an improper and evil

1  motive which constitutes a malicious and conscious disregard of Claimant's rights.  By reason

2  thereof, Claimant is entitled to an award of exemplary and punitive damages against Respondents

3  sufficient to punish and deter Respondent from engaging in such conduct in the future in an

4  amount to be determined at arbitration.

<strong><u>SECOND CAUSE OF ACTION</u></strong>

<strong>(Wrongful Termination - Claimant against All Respondents)</strong>

7      21.    Claimant refers to and incorporates herein by reference the above paragraphs as

8  though fully set forth herein.

9      22.    Claimant was employed by Respondent.  Respondent did not extend Claimant's

10  contract after Claimant's complaints regarding using misleading data in a study.

11      23.    Claimant is informed and believes, and based thereon alleges, that as a direct and

12  proximate result of the acts alleged herein, Claimant has suffered and continues to suffer

13  substantial embarrassment, extreme and sever humiliation, mental anguish, emotional and

14  physical distress, pain and suffering, and has been generally damages in an amount to be

15  determined at arbitration.

16      24.    Claimant is informed and believes, and based thereon allege, that Respondents

17  willfully engaged in the conduct alleged herein with malice, fraud, and oppression, without

18  excuse or justification, and with the specific intent to injure Claimant for an improper and evil

19  motive which constitutes a malicious and conscious disregard of Claimant's rights. By reason

20  thereof, Claimant is entitled to an award of exemplary and punitive damages against Respondents

21  sufficient to punish and deter Defendants from engaging in such conduct in the future in an

22  amount to be determined at arbitration.

<strong><u>PRAYER FOR DAMAGES</u></strong>

24  WHEREFORE, Claimant prays for judgment against Respondents, and DOES 1 through

25  100, inclusive, and each of them, jointly and severally, as follows:

<strong><u>ON THE FIRST CAUSE OF ACTION</u></strong>

<strong><u>(WHISTLEBLOWER RETALIATION)</u></strong>

28      1.    For compensatory damages, including but not limited to lost back pay, plus

interest, lost fringe benefits and future lost earnings and fringe benefits, damages for emotional distress and pain and suffering, according to proof allowed by law;

2. For civil penalties in an amount to be determined at trial;

3. For general and special damages in an amount to be determined at trial;

4. For punitive damages in an amount to be determined at trial;

5. For an award of prejudgment and post-judgment interest; and

6. For an award to Plaintiff of cost of suit incurred herein and reasonable attorneys' fees.

## ON THE SECOND CAUSE OF ACTION

## (WRONGFUL TERMINATION)

1. For lost wages and benefits and other monetary relief in an amount to be determined at trial;

2. For compensatory damages in an amount to be determined at trial;

3. For general and special damages in an amount to be determined at trial, but exceeding $250,000'

4. For punitive damages in an amount to be determined at trial; and

5. For attorneys' fees.

**AS TO ALL CAUSES OF ACTION:**

1. For an award of reasonable attorneys' fees, costs, expert costs, and expenses pursuant to statutory and common law; and

2. For such other and further relief as this Court may deem just, fair, and proper.

DATED: November 12, 2021

Respectfully Submitted,
BARKHORDARIAN LAW FIRM, PLC

/s/ Heather K. Cox
_____
 Heather K. Cox
Attorneys for Claimant

# ARBITRATION AGREEMENT

*Rev. July 2019*

**AGREEMENT TO ARBITRATE CLAIMS**

Internal processes are available for collegially resolving differences that may arise between the University of Southern California (the "University") and its faculty or staff, including formal faculty grievance and staff complaint procedures. If, for whatever reason, internal collegial processes do not resolve such differences, final and binding impartial arbitration is a means of avoiding the delay, expense, and unpleasantness of a lawsuit.

Therefore, the University and the faculty or staff member named below ("Employee") agree to the resolution by arbitration of all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee. Any claim that otherwise would have been decidable in a court of law — whether under local, state, or federal law — will instead be decided by arbitration, except as specifically excluded by this Agreement. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for "whistleblowing" or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

Notwithstanding the foregoing, the following claims are not covered by this Agreement: (1) claims brought under Title VII of the Civil Rights Act of 1964; (2) tort claims (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention) if they are related to or arising out of sexual assault or sexual harassment; (3) claims for workers' compensation or unemployment compensation; (4) claims by or against faculty that are subject to review by writ of administrative mandamus under California Code of Civil Procedure Section 1094.5 or any successor statute; (5) claims that are arbitrable under a collective bargaining agreement governing Employee's employment; (6) claims arising under the National Labor Relations Act; and (7) claims that as a matter of law (after application of Federal Arbitration Act preemption principles) may not be subject to a predispute agreement to arbitrate.

The parties agree that final and binding arbitration shall be the sole and exclusive remedy for resolving any claims covered by this Agreement, instead of any court action, which is hereby expressly waived.

Any arbitration conducted pursuant to this Agreement shall be held in Los Angeles, California (or in the city in which the Employee is or was employed by the University). Any arbitration pursuant to this Agreement shall be held under the auspices of JAMS, and conducted in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), except to the extent such rules conflict with the procedures set forth herein. The JAMS Employment Arbitration Rules & Procedures are currently available at http://www.jamsadr.com/rules-employment-arbitration, and Employee understands USC will provide a printed copy upon request. Employee's share of the arbitrator's fee and the JAMS filing fee shall be no more than the then-current filing fee in the California Superior Court (or

USC000027

*Rev. July 2019*

the equivalent state court in the event the arbitration is initiated outside California). The arbitrator may grant a waiver of Employee's share of these fees upon a showing of hardship. Employee and the University shall each bear their own costs relating to the arbitration and their own attorneys' fees, except as otherwise provided by law and as set forth in this Agreement. This Agreement supersedes any prior or contemporaneous agreement on the subject, shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the "Agreement to Arbitrate Claims" and is signed by the President of the University.

Employee or the University must give written notice of any claim to the other party within the time prescribed by the state or federal statute of limitations applicable to the claim being made. Any claim for which notice is not given within the time prescribed by the applicable state or federal statute of limitations, shall be barred. The written notice shall identify and factually describe the nature of all claims asserted, and in case of notice to the University, it shall be directed to the Provost (for faculty) or the Senior Vice President for Administration (for staff).

Notwithstanding any provision of the JAMS Rules, arbitration shall occur on an individual basis only, and a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the formation, validity, or enforceability of this Agreement.  Thus, to the maximum extent permitted by law, Employee hereby waives any right to bring on behalf of persons other than Employee, or to otherwise participate with other persons in, any class or collective action. Employee retains the right to bring claims in arbitration for himself or herself as an individual (and only for himself or herself).

The arbitrator shall award all the remedies to which the prevailing party is legally entitled, including attorneys' fees and/or litigation costs if recoverable under applicable law. The arbitrator may not, however, award remedies that would be unavailable in court under the legal standards applicable to the claim(s) asserted. The arbitrator shall afford the parties adequate discovery, including deposition discovery, taking into account their shared desire to have a fast, cost-effective dispute-resolution mechanism. The Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act either is inapplicable, or held not to require arbitration of a particular claim or claims, California law pertaining to agreements to arbitrate shall apply. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. The arbitrator shall render an award and a written, reasoned opinion in support thereof. Judgment on the award may be entered in any court having jurisdiction thereof.

USC000028

*Rev. July 2019*

This Agreement shall not be interpreted to preclude Employee from filing (or recovering through) an administrative charge or complaint with, or communicating in any way with, the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, the California Division of Labor Standards Enforcement, the National Labor Relations Board, or any other federal, state, or local agency or official. If any provision of this Agreement is determined to be void or otherwise unenforceable, this determination shall not affect the validity of the remainder of the Agreement.

Employee understands and agrees that by signing this agreement, he/she and the University are giving up their respective rights to a jury trial.

Date: 01/06/2021                          By: _____

                                          Employee's signature

                                          Annunziata Crupi

                                          Full name of employee

                                          By: _____

                                          Carol L. Folt, President
                                          University of Southern California

3

USC000029

DEMAND FOR ARBITRATION FORM

## JAMS Local Center

Received

NOV 1 9 2021

Office Of The General Counsel

### 1. JAMS Local Center

| | |
|---|---|
| JAMS resolution center | Arbitration Rules |
| Los Angeles, California | JAMS Employment Arbitration Rules and Procedures |

#### Filing & submission fees

Standard Arbitration

Consumer pays no more than $250, Company pays the balance of filing fee.

#### Respondents

1. University of Southern California
   3551 Trousdale Parkway #150
   90089 Los Angeles CA
   213-740-8184

#### Respondent Representatives

#### Claimants

1. Annunziata Crupi
   N/A
   3711 Mentone Avenue Apt 19
   90034 Los Angeles CA
   424-230-6547
   nancy.crupi@hotmail.it

#### Claimant Representatives

A. Heather Cox
   Barkhordarian Law Firm
   6047 Bristol Parkway, Second Floor
   90230 Culver City CA
   323-450-2777
   heather@barklawfirm.com

### 4. Nature of Dispute

Please see attached.

Amount in Controversy $250000



look at paragraph 5 of the agreement.

1/3

DEMAND FOR ARBITRATION FORM

## JAMS Local Center

NO, this is not a CONSUMER ARBITRATION

More than $250,000

### 7. Submission Information

Respondent Name Yesli                         Phone 323-450-2777

Address 6047 Bristol Parkway, Second Floor    E-mail yesli@barklawfirm.com

Zip Code 90230

City Culver City

State CA

☒  I Agree to the Terms of Service

Thank you for selecting JAMS as your dispute resolution provider. We appreciate your prompt payment and offer various online options: ACH, E-check, and Credit Card. We accept Visa, Mastercard, American Express, and Discover (US Dollars only). Please note that PayStand, our online payment vendor, assesses a service fee of 2.738% plus $.30 cents per transaction for all credit card payments. There is no service fee for E-check or ACH payments. The filing fee is non-refundable. JAMS will issue a partial refund of $875 if the matter is withdrawn within five days of filing.

☐  By checking this box, I agree to these terms.

ACCEPT TO CONTINUE



DEMAND FOR ARBITRATION FORM

JAMS Local Center

# EXHIBIT D

**Walrod, Peter**

| | |
|---|---|
| **From:** | Ashley Rodriguez <ARodriguez@jamsadr.com> |
| **Sent:** | Wednesday, October 26, 2022 4:45 PM |
| **To:** | Nancy Crupi; Walrod, Peter; Zee, Candice |
| **Subject:** | RE: [EXT] R: Crupi/USC - Documents request [VED-VP.FID4931037] |

Good Afternoon,

Ms. Crupi's below email as well as Respondent's request for a call have been forwarded to the Arbitrator, per JAMS policy.

Thank you,

Ashley

**Ashley D. Rodriguez**

Associate Business Manager

JAMS – Los Angeles
Direct #: 213-253-9704

arodriguez@jamsadr.com

Manage your case anytime, anywhere. **Register now for JAMS Access**.

Follow us on **LinkedIn** and **Twitter**.

---

**From:** Nancy Crupi <nancy.crupi@hotmail.it>
**Sent:** Wednesday, October 26, 2022 11:17 AM
**To:** Ashley Rodriguez <ARodriguez@jamsadr.com>; pwalrod@vedderprice.com; czee@vedderprice.com
**Subject:** [EXT] R: Crupi/USC - Documents request [VED-VP.FID4931037]

**Caution:** This email originated from outside JAMS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

As I said multiple times, I do not have a lawyer yet, and at the moment we are still in the negotiaton phase and collection of evidences.

Ashley please be informed that the arbitration can only be initiated upon request by the party who submitted the claims, i.e. myself, and I am still collecting evidences to decide whether to go to arbitration and/or how to negotiate the case.

Walrod, please explain to Ashley what I have told you last time you emailed me, and also please forward me the evidences I have requested as you are delaying the process by withdrawing evidences.

Meanwhile, everyone, please stop stalking me as I have the right to survive by using my time to earn money for it, and your behavior has become an obstacle to my survival that violates human rights.

# EXHIBIT E

**Walrod, Peter**

| | |
|---|---|
| **From:** | Nancy Crupi <nancy.crupi@hotmail.it> |
| **Sent:** | Wednesday, April 12, 2023 10:57 AM |
| **To:** | Ashley Rodriguez |
| **Cc:** | Walrod, Peter; Zee, Candice |
| **Subject:** | [EXT] request to reschedule case management meeting |

Hi Ashley,
as I am representing myself despite my attempt to find legal representation by the terms provided by JAMS, I will need more time to prepare my counterclaims and my case.

I request to reschedule the meeting (and the submission of any further documentation) for a date 60 days after the current meeting, which would approximately be the 21st of June 2023.

Please confirm that this is possible.

Thanks.

# EXHIBIT F

Claimant, Annunziata Crupi, has requested the Superior Court of California to void the arbitration agreement, filing a case of which the current case, filed by Greg Wong to JAMS, is just a small part, and that, among the other things, also includes claims that are not arbitrable or not explicitly covered by the signed arbitration agreement (misappropriation in violation of the Identity Theft and Assumption Deterrence Act, intellectual property theft in violation of U.S. Code § 1832 Theft of trade secrets, missed overtime pay in violation of Fair Labor Standard Act, Federal Regulations and of USC's policies, violation of Wages and the Fair Labor Standards Act, fraudulent inducement of employment in violation of Labor Code LAB § 970-972, fraud in employment in violation of Civil Code § 1709-1710, solicitation of employment via false advertising in violation of California Business and Professions Code § 17500, false descriptions in violation of US law on Commerce and Trade 15 U.S.C. § 1125, Civil Conspiracy in violation of the Restatement (Third) of Torts, and claims involving immigration law).

Therefore, Claimant requests to remove the case "Crupi vs USC" from JAMS based on the following grounds and reasons:

**Reason 1**

The latest arbitration agreement signed by Claimant has been signed unconscionably, under duress, as part of a fraud in employment, and as a mean to punish Claimant as part of a retaliation, and therefore this grants void of the arbitration agreement and nullifies the full employment contract - of which signing the arbitration agreement was a mandatory part - as well as the arbitration agreement in itself, and supports the removal of the case from JAMS:

1) The HR (Wendy Snaer, herein after "WS"), who requested Claimant to sign the agreement, has conspired to frame Claimant for unprofessional conduct, supporting the fraud in employment and the whistleblowing retaliation perpetrated by Valter Longo (herein after "VL") and USC.

2) WS has requested Claimant to sign the contract without providing explanation on what the arbitration agreement was for, nor she ever provided that information prior to that. That explanation has never been provided to Claimant, who is not a US citizen nor a lawyer, and comes from a Country where arbitration agreements don't exist or are not as common as in the US.

3) VL has literally warned, intimidated, and coerced Claimant, in writing and orally, to coerce Claimant to sign a new employment contract that represented a punishment, and a retaliation - contract of which the arbitration agreement was part.

4) VL, in conjunction with WS, has coerced Claimant to sign the employment contract by fabricating a situation in which he first committed misappropriation and identity theft against Claimant, then accused Claimant of unprofessionalism for not complying with illicit and unethical requests. Then, VL, aware that Claimant was in need of finding a new home and could become otherwise homeless by the end of December 2020, leveraged on those conditions of duress in order to coerce Claimant to accept an employment contract, and with it the arbitration agreement too, that was in fact a demotion and constituted one of the first retaliatory actions committed by VL and USC

against Claimant, and one of the first conspiracies committed by VL and WS against Claimant.

5) The arbitration agreement was a mandatory condition of employment, it has been offered on a "take-it-or-leave-it" basis, and while Claimant was pressured to sign the contract leveraging on the need for a new visa and contract to avoid becoming homeless, therefore causing oppression, as Claimant had no meaningful opportunity to negotiate. This proves that the arbitration agreement was procedurally unconscionable. Wherry v. Award Inc. (2011) 192 Cal.App.4th 1242.

6) USC, VL, and WS fraudulently induced Claimant to sign the contract which included the agreement to arbitrate, and the fraud permeates the entire contract, including the agreement to arbitrate, therefore the arbitration agreement is unenforceable. Strotz v. Dean Witter Reynolds, Inc. (1990)

7) The signing of the arbitration agreement itself was part of a fraud and a conspiracy against Claimant, that also unfolded exactly how Claimant had foreseen, despite USC had been informed about it, and therefore proving the conspiracy and the fraud, and USC's participation in it. Arbitration agreements signed fraudulently are unenforceable.

8) In summary, Claimant has been forced and coerced to sign both the employment contract and the arbitration agreement by leveraging on the need for a new visa and a new employment contract, through threats, warnings, intimidations, retaliation, and while the defendants were aware of Claimant's dependency on receiving the new contract and visa on time. Wendy Snaer and Valter Longo coordinated effort conspiring against Claimant in order to coerce Claimant to sign the contract:
(1) by unnecessarily delaying the provision of the new contract and visa fabricating a claim of unprofessionalism in response to Claimant's refusal to commit data fraud,
(2) through coercive control of Claimant, inducing stress while Claimant had taken a sick day and while Claimant was already in a stressful situation that Wendy and Valter were both aware of,
(3) through fraud, as (a) Claimant has been accused of being unprofessional and insubordinate, and had a due promotion denied using false accusations to obtain a special legal permit allowing defendants to not promote Claimant, (b) Wendy lied to Claimant regarding the timing necessary to process the contract and denied through fraud the possibility of an expedite visa request,
(4) through oppression and extraordinary financial pressure, as not signing on time the visa and contract renewal, and the arbitration agreement, would have (a) violated Claimant's right to free movement, therefore Claimant has received threats to personal liberty, (b) forced Claimant to having to pay the full rent of their apartment until the new contract would have been provided, (c) forced Claimant to having to leave the USA without having the time to plan it and to minimize the costs, which were unbearable and forced Claimant to sign the contract under oppression and financial pressure, leaving Claimant with no other choice than signing.

9) Based on the facts stated above, the arbitration agreement has been signed through undue influence:
Claimant was in a vulnerable position due to a high level of dependency from the contract: (a) the individuals / entities accused of undue influence (USC, WS and VL) knew about the victim's vulnerability and had authority over Claimant, (b) VL influenced

Claimant through extortion and intimidation, right after committing misappropriation and falsely accusing Claimant of unprofessionalism as a retaliation for refusing to commit illicit and unethical actions on his behalf, which further placed Claimant in a higher state of vulnerability right before the renewal of the contract, visa, and arbitration agreement, (c) VL used punitive conditions and requested Claimant to accept increased vulnerability as necessary conditions for the visa and contract renewal, forcing Claimant to sign those contracts and the arbitration agreement through coercion and oppression. The consequences of those actions have been that Claimant has been forced to sign the arbitration agreement in a rush and without possibility of negotiating the signing of the agreement, nor of understanding the implications of signing the agreement.

**Reason 2**

The arbitration agreement recites the following:

"*Internal processes are available for collegially resolving differences that may arise between the University of Southern California (the "University") and its faculty or staff, including formal faculty grievance and staff complaint procedures. If, for whatever reason, internal collegial processes do not resolve such differences, final and binding impartial arbitration is a means of avoiding the delay, expense, and unpleasantness of a lawsuit. Therefore, the University and the faculty or staff member named below ("Employee") agree to the resolution by arbitration of all claims, […]*"

1) Claimant is also a consumer and a taxpayer, not only an employee. USC and VL have treated Claimant not as an employee, but as a consumer and a taxpayer, as indeed as soon as Claimant has behaved as such and has reported to the competent offices the observed abuses, committed by VL and USC, against the public, the taxpayers, and the consumers, VL and USC have terminated Claimant. JAMS has told Claimant, in a communication to Claimant and USC, that Claimant is a consumer. As a consumer and a taxpayer, Claimant is not covered by this arbitration agreement, and has the right to go to court, as consumers are not mentioned and therefore not covered by the current arbitration agreement.

2) Claimant has been hired as a postdoc. Postdocs are not staff nor faculty, but employees and trainees, therefore this arbitration agreement has no legal validity and is null, and it surely doesn't cover Claimant as a trainee. The case filed by Claimant considers Claimant as a trainee and an employee, as mandated by federal law, and therefore the case must be continued in court because the agreement regards only the claims that refer to half of the rights of Claimant: the ones that Claimant has as an employee.

3) The arbitration agreement justifies the need for an arbitration agreement and for the arbitration of the case based on the following reasons: "means of avoiding delay, expense, and unpleasantness of a lawsuit.".
   (a) Lawsuits are unpleasant only to criminals, not to innocent and abused civilians seeking justice;

(b) JAMS has allowed USC to submit the response to the Claimant's claims 1 year and a half after the filing of the claims, instead of 14 days, going against JAMS rules and overall causing a huge delay as compared to court;

(c) JAMS has caused more delays to the case than any court in history or at least more than the average delay caused by the Superior Court of California to similar cases in 2021-2023;

(d) the Superior Court of California has waived all Claimant's fees, and Claimant is currently in extreme poverty, while JAMS has requested Claimant to pay $400 just to submit an amendment/new arbitration demand and has recently sent a document to Claimant explaining that the arbitrator is paid over $1000/day and $12,000 for a hearing and that the expenses are split between the parties, making the case in JAMS unsustainable for any civilians, posing financial barriers to civilians, employees, and consumers, who are abused by extremely wealthy and established employers and institutions, posing obstacles to justice;

(e) JAMS has demonstrated several times of not being "impartial", by being selectively unresponsive with Claimant, by failing at meeting deadlines that were important for Claimant in ways that favored USC, and by failing at enforcing JAMS regulations with USC, therefore breaching the arbitration agreement which is now invalid.

Therefore, the reasons provided by USC in the arbitration agreement are unconstitutional, go against civil rights, go against public policy, do not truthfully represent the reality of the process in JAMS based on how the current case has been handled, and only benefit the employers and those who commit crimes serially, which ultimately allow the systematic abuse of the public. For this, this arbitration agreement is invalid, creates a ground to request public injunction, has no reason to exist, and therefore does not represent a right of USC, but an abuse of power against a protected category: a woman, a non US-citizen/immigrant, a member of the LGBTQIA+ community, a vulnerable temporary employee/trainee, and a civilian member of the public who has witnessed and reported taxpayers' and consumers' fraud and has collaborated in an investigation against defendants. Altogether, these elements create grounds for substantive unconscionability of the arbitration agreement: the arbitration agreement is so one-sided in favor of the employer without justification. Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC (2021) 55 Cal.App.4th 223, 246.

**Reason 3**

The arbitration agreement recites the following:

"*The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for "whistleblowing" or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance. […]*

*Notwithstanding the foregoing, the following claims are not covered by this Agreement: (1) claims brought under Title VII of the Civil Rights Act of 1964; (2) tort claims (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention) if they are related to or arising out of sexual assault or sexual harassment; (3) claims for workers' compensation or unemployment compensation; (4) claims by or against faculty that are subject to review by writ of administrative mandamus under California Code of Civil Procedure Section 1094.5 or any successor statute; (5) claims that are arbitrable under a collective bargaining agreement governing Employee's employment; (6) claims arising under the National Labor Relations Act; and (7) claims that as a matter of law (after application of Federal Arbitration Act preemption principles) may not be subject to a predispute agreement to arbitrate."*

1) There is no public policy forcing arbitration of issues that the parties have not expressively agreed to arbitrate. Moreover, based on Metters v. Ralphs Grocery Co. (2008) 161 Cal.App.4th 696: "[W]hen an employee is unaware of the contractual provisions, there is no meeting of the minds, no mutuality, and no fundamental fairness.". At the time of signing the arbitration agreement, Claimant was not a US citizen, was on a J1 visa, had never dealt with any legal proceedings in the US, had never had a lawyer in the US, nor had ever studied law. The arbitration agreement does not explicitly mention claims of: misappropriation in violation of the Identity Theft and Assumption Deterrence Act, intellectual property theft in violation of U.S. Code § 1832 Theft of trade secrets, missed overtime pay in violation of Fair Labor Standard Act, Federal Regulations and of USC's policies, violation of Wages and the Fair Labor Standards Act, fraudulent inducement of employment in violation of Labor Code LAB § 970-972, fraud in employment in violation of Civil Code § 1709-1710, solicitation of employment via false advertising in violation of California Business and Professions Code § 17500, false descriptions in violation of US law on Commerce and Trade 15 U.S.C. § 1125, Civil Conspiracy in violation of the Restatement (Third) of Torts, torture, and violation of human rights. Hence, Claimant has never agreed to arbitrate those claims, which are already part of the case filed in court and/or constitute possible additional claims that Claimant could file against defendants, and, specifically, the arbitration agreement does not cover fraud, which is the main issue of the case;

2) The agreement excludes violations of Title VII, that Claimant has been subjected to and for which is about to receive a right to sue letter;

3) The agreement excludes claims that may not be subject to a predispute agreement to arbitrate: in the State of California, the following claims are not subjected to arbitration: workers' compensation.

4) The arbitration agreement violates the law and is oppressive and fraudulent, therefore unenforceable, because it mentions (to a vulnerable non-US citizen who is not a lawyer) work compensation and claims regarding immigration law as claims for which arbitration is mandated by the agreement, while those case are considered non arbitrable by the federal and state law in the US.

**Reason 4**

The arbitration agreement states the following: "*Any arbitration conducted pursuant to this
Agreement shall be held in Los Angeles, California (or in the city in which the Employee is or
was employed by the University). Any arbitration pursuant to this Agreement shall be held
under the auspices of JAMS, and conducted in accordance with the JAMS Employment
Arbitration Rules & Procedures (and no other rules), except to the extent such rules conflict
with the procedures set forth herein. The JAMS Employment Arbitration Rules & Procedures
are currently available at http://www.jamsadr.com/rules-employment-arbitration, and
Employee understands USC will provide a printed copy upon request.*" […] *Employee's share of
the arbitrator's fee and the JAMS filing fee shall be no more than the current filing fee in the
California Superior Court (or Rev. July 2019 2 the equivalent state court in the event the
arbitration is initiated outside California). The arbitrator may grant a waiver of Employee's
share of these fees upon a showing of hardship. Employee and the University shall each bear
their own costs relating to the arbitration and their own attorneys' fees, except as otherwise
provided by law and as set forth in this Agreement. […] The arbitrator shall award all the
remedies to which the prevailing party is legally entitled, including attorneys' fees and/or
litigation costs if recoverable under applicable law. The arbitrator may not, however, award
remedies that would be unavailable in court under the legal standards applicable to the
claim(s) asserted. The arbitrator shall afford the parties adequate discovery, including
deposition discovery, taking into account their shared desire to have a fast, cost-effective
dispute-resolution mechanism.*"

1) Based on Metters v. Ralphs Grocery Co. (2008) 161 Cal.App.4th 696: "[W]hen an
   employee is unaware of the contractual provisions, there is no meeting of the minds,
   no mutuality, and no fundamental fairness.". Placing a link to the JAMS rules is not
   sufficient to deem that Claimant has fully agreed to the signed contract.
2) A failure of performing an obligation or violating a duty of commission of the arbitral
   institutional rules, constitutes a breach of contract. If in an arbitration the defendant
   fails to deposit any requisite document, which the parties are mandatorily bound to
   submit as in terms of the arbitral institutional rules, the arbitration procedure may
   come to a halt.
   The JAMS rules at the link provided by USC in the arbitration agreement state as
   following: "(c) Within fourteen (14) calendar days of service of the notice of claim, a
   Respondent may submit to JAMS and serve on other Parties a response and a
   statement of any affirmative defenses, including jurisdictional challenges, or
   counterclaims it may have. JAMS may grant reasonable extensions of time to file a
   response or counterclaim prior to the appointment of the Arbitrator."
   (https://www.jamsadr.com/arbitration-fees)
   The arbitrator had been appointed shortly after Greg Wong has submitted the claims to
   JAMS. USC has submitted the response to Claimant's claims 1 year and a half after
   Greg Wong submitted the arbitration demand to JAMS, violating JAMS rules, the very
   institution that USC had forced Claimant to accept as the mandated arbitration
   institution in the contract ("forced": both because no other option has been provided
   and because the contract has been signed under coercion), and the very rules that USC
   had included a link to in the arbitration agreement, and that both parties allegedly were
   agreeing to, and therefore violating the arbitration agreement itself.

(a) USC has not followed JAMS rules and has therefore committed a unilateral repudiation of the arbitration agreement, breaching the contract.

(b) JAMS, the arbitration institution to which both parties had given the authority to enforce the rules and ensure justice via those rules, has not enforced its own rules. Since the day Greg Wong submitted the case to JAMS on behalf of Claimant, although via misrepresentation, JAMS, supposedly unaware of the misrepresentation, has also signed a contract with Claimant, promising to deal with Claimant's legal matter by following JAMS rules and in a neutral and unbiased way, by also providing prompt and unbiased communication between Claimant and JAMS, and by enforcing JAMS regulations towards USC, on behalf and doing the interests of Claimant as much as of USC.

(c) USC and JAMS have breached all the contracts signed with and by Claimant, which are therefore now invalid.

(d) JAMS has not respected the conditions described in the agreement (and JAMS rules provided in the external linked listed in the contract), therefore USC has provided to Claimant an arbitration agreement that was fraudulent, because it listed untruthful facts.

1) JAMS has refused to waive the fees when Claimant told to JAMS of being in extreme poverty and of not being capable of paying JAMS fees, violating the arbitration agreement and/or making the agreement fraudulent by not offering the conditions listed in the arbitration agreement.

2) The statement "*The arbitrator may not, however, award remedies that would be unavailable in court under the legal standards applicable to the claim(s) asserted.*" is unconstitutional and violates human rights. Public Court has the authority to establish new standards and does not award remedies only if those have been previously awarded to someone else, but on a case-by-case basis. Arbitrators must grant the same rights that individuals would have in court. That statement ultimately means that the arbitrator does not have the authority to establish new standards and to do anything that has never been done before in court, therefore limiting JAMS jurisdiction and authority, which is therefore, by contract, not equal to, and not as just as, public court, therefore representing a *de facto* below standards, unconstitutional, unfair, and unlawful way of resolving legal cases, especially cases regarding equality and human rights, which by definition require the constant establishment of new standards. That statement denies Claimant's right to have a fair trial, going against human and civil rights, and making the arbitration agreement invalid.

**Reason 5**

The arbitration demand submitted to JAMS has been submitted via misrepresentation of Claimant by the Barkhordarian law firm, which never shared with Claimant the document filed to JAMS before submitting it to JAMS, and has only sent it to Claimant after Claimant decided to release the law firm. Moreover, Greg Wong did not inform Claimant of the possibility of going to court and presented JAMS as the only option available. Claimant is not a US citizen and is not a lawyer, and therefore was not informed of the possibility of filing in court nor of the differences between filing to JAMS or to court. Greg Wong has committed legal malpractice and misrepresentation of Claimant and therefore the case filed in JAMS is invalid.

In addition, Greg Wong has submitted an arbitration demand that falsely states that Claimant has been victim of wrongful constructive termination, while he was aware that Claimant had been terminated. Moreover, at the time of the filing, Claimant was still working at USC and had never resigned, therefore that claim makes no sense and is the prove that Greg Wong was either incompetent or colluded by USC. Either way, the filed arbitration demand needs to be removed from JAMS because it does not represent the truth, and it does not represent Claimant's will, which has been defrauded by the law firm and victim of misrepresentation and identity theft. In addition, Greg Wong has filed a case for a max of $25,000 settlement without discussing it with Claimant, while based on the facts and the claims submitted to court this is an unlimited case and JAMS cannot continue the current case as it would violate civil rights and go against public policy.

Gregory Wong is currently, and has been lately, exclusively representing clients filing claims either in JAMS or against USC or both. Hence, Gregory Wong, USC, and JAMS, have very close relationships. Based on Claimant's direct experience, Greg Wong is colluded by USC and misrepresents clients to favor USC, and it has defrauded Claimant. Therefore, JAMS, which has such a close relationship both with USC and with Greg Wong, does not constitute a neutral and unbiased institution in this particular case. This grants ground for removal of the case from JAMS.

**Reason 6**

The agreement provides JAMS as the mandated arbitration institution. For the reasons stated above, and for the ones below, JAMS has committed fraud against Claimant and demonstrated of being biased, therefore the case must be handled by court. Also, as a direct consequence, the arbitration agreement, which forces employees to file the claims to a biased institution, is unconscionable, one-sided, non-mutual, fraudulent, and goes against public policy, therefore also needing a public injunction. Armendariz, 24 Cal.4th at 102.

1) JAMS has disincentivized and hindered Claimant from submitting the correct claims before the end of the statute of limitations:
   (a) denying Claimant the waiving of the fees needed to submit the claims, and then (b) delaying the response to Claimant's requests for information on how to submit a new arbitration demand and/or an amendment, despite repetitive Claimant's requests and follow ups. As of today, that specific Claimant's request, submitted to JAMS on April 19th, is still left without a response, as many others as well, while the end of the statute of limitation for the claim of wrongful termination - the one that Greg Wong has fraudulently changed to wrongful constructive termination and that Claimant needed to file on time - ended on the 27th of May. Claimant even called Ashley Rodriguez, the assigned case manager, which asked Claimant to wait for a response from the arbitrator. After that phone call, which was never followed by a response from JAMS, and exactly 14 days before the end of Claimant's statute of limitation, the arbitrator submitted a recusal, therefore Claimant did not have any arbitrator to contact for information, risking the expiration of the statute of limitation. Indeed, if Claimant had waited for a response, instead of submitting the claims to court, the statute of limitation would have expired, as indeed the response never arrived. Moreover, JAMS provides the timeframe "14 days" as a reasonable time frame to respond to the parties,

therefore, even if Claimant had solicited again a response from JAMS the very same day that the arbitrator submitted the recusal, JAMS could have still responded after the end of the statute of limitation while not committing any violations of the JAMS rules, because of the 14 days rule and of the timing chosen by the arbitrator to submit the recusal. JAMS has allowed the statute of limitation to expire by systematically allowing too much time to pass between communications, forcing Claimant to file the case in court due to JAMS persistent negligent and/or intentional conduct, meaning that JAMS as chosen of renouncing to handling the case.

2) JAMS has been selectively unresponsive to Claimant and a huge part of the communication that Claimant sent to JAMS resulted in receiving an automatic reply stating that the case manager assigned to the case was not in the office or was on vacation until the following week, ultimately delaying the processing of the case, and potentially leading to the expiration of the statutes of limitation;

3) JAMS has made the case unnecessarily expensive for Claimant, posing financial barriers factually favoring the employer by preventing Claimant - which has been brought to poverty by the employer itself - from submitting a demand for arbitration on time and disincentivizing Claimant from submitting claims;

4) JAMS, each and every time, assigned to the case male arbitrators and female arbitrator's assistants, therefore the arbitration is not neutral towards Claimant, a woman, as the case also entails sex-based discrimination and misogyny;

5) after Claimant has filed a case in court in which they indicated that Greg Wong and Heather Cox, as well as JAMS, were biased, and after USC has been served with the filed claims, JAMS has timely produced an unrequested document (at least not requested by Claimant) to show that Greg Wong and Heather Cox were unbiased, allowing USC to use that document against Claimant to object to this very request for removal of the case from JAMS, demonstrating that USC and JAMS communicated and coordinated actions against Claimant on matters that were key to the case, but without involving Claimant in the communication, therefore demonstrating of not being neutral.

**Reason 7**

Claimant has requested public injunction. Under the McGill rule, companies cannot require consumers to waive the right to seek a public injunction.

**Reason 8**

The case regards immigration law as well, which is a matter that cannot be arbitrated because the parties cannot enter into an agreement on those matters without restriction. Indeed, Claimant has been victim of a systematic discrimination, and a subsequent systematic persecution, based on national origin and immigration status, for which Claimant has requested a right to sue letter. Therefore, the matter cannot be arbitrated, and it is requested by law to be removed from arbitration and handled by a public court.

**Reason 9**

USC, VL, and Sebastian Brandhorst, have continued to abuse Claimant after the termination of the contract. Therefore, the arbitration agreement only applies to what has happened until

March 28 2022, which is just a part of the case. The whole case, instead, takes into consideration a larger time frame, and it would make no sense to keep only a minimal part of the case in arbitration, as the rest will anyways be left in court as it is outside of the scope of the arbitration agreement.

Los Angeles

Date

06/16/2023

Claimant (self-represented)

Annunziata Crupi

Signature

# VedderPrice

Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
Miami
vedderprice.com

June 30, 2023

Candice T. Zee
Shareholder
+1 424 204 7771
czee@vedderprice.com

Peter Walrod
Associate
+1 (415) 749 9518
pwalrod@vedderprice.com

JAMS ADR
JLucky@jamsadr.com
MelissaOrnstil@jamsadr.com
OMontealegre@jamsadr.com

Re:   Annunziata Crupi ("Dr. Crupi") v. University of Southern California,
      JAMS Ref. No. 5220000062.

Dear Hon. Jackson Lucky,

Respondent University of Southern California ("USC") opposes Dr. Crupi's request to "remove the case 'Crupi vs USC' from JAMS."

As is stated in the JAMS Employment Arbitration Rules & Procedures ("JAMS Rules") Rule 13(a), "No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration."  Such consent is not forthcoming from USC.

Dr. Crupi has undoubtedly waived any challenge to the enforceability of her mutual Arbitration Agreement with USC (the "Arbitration Agreement"), both by not raising the issue until a year and a half after initiation of this lawsuit, and because *Dr. Crupi herself* chose this forum.  Dr. Crupi, a highly educated PhD holder, cannot now argue that she did not give valid consent to the Arbitration Agreement.  Many of her complaints about the JAMS process can be dealt with through the appropriate procedural mechanisms.

In short, Dr. Crupi's request must be denied.

**No Legal Basis for "Removal" from Arbitration**

Under JAMS Rule 9(f), "Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability."

Dr. Crupi herself initiated this matter, in arbitration, on **November 19, 2021**.  Since that date, a year and a half has passed.

Already, at this time, she knew all the facts and circumstances that she now alleges make the Arbitration Agreement unenforceable.  If any coercion occurred, or if there was any unconscionability of unilateral mistake, at all in connection with her agreement to the Arbitration Agreement, she knew about it as of November 19, 2021 – and chose to litigate in this forum.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

JAMS ADR
Hon. Jackson Lucky
June 30, 2023
Page 2

Moreover, Dr. Crupi was represented by competent employment counsel at the time the matter was initiated in JAMS.  Her counsel, who are undoubtedly well-versed in employment law, did not raise any claims of unconscionability or mistake.  Any allegations of substandard representation by her prior counsel are irrelevant and would severely prejudice USC.

Nor does Dr. Crupi indicate any new facts or circumstances that arose from this time that "suggest an issue of arbitrability."  Accordingly, Dr. Crupi has waived her objections to this Arbitration and/or to the enforceability of the Arbitration Agreement.

**Dr. Crupi's Underlying Contentions Are Conclusory and Lack Merit**

Contrary to Dr. Crupi's assertion, California's Supreme Court has deemed it a "self evident fact" that "arbitration has become an accepted and *favored* method of resolving disputes."  *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 706 (1976).  (emphasis added).  "[C]ourts will 'indulge every intendment to give effect to such proceedings.'"  *Bigler v. Harker Sch.*, 213 Cal. App. 4th 727, 735 (2013).  It would be Dr. Crupi's burden to prove why the Arbitration Agreement is unenforceable.  See, e.g., *Bigler*, 213 Cal. App. 4th at 735 (objecting party has burden to show that claims fall outside scope of agreement); *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (objecting party has burden of proving unconscionability).

Dr. Crupi's factual allegations are conclusory.  She does not point to a single concrete fact that supports her arguments.  She relies on categorical accusations of "undue influence", "coercion" or "conspiracy".  However, instead of raising these issues promptly, she *herself* chose to litigate in this forum.  Indeed, she herself attached a copy of the Arbitration Agreement (signed by her) to the Demand for Arbitration.

Moreover, Dr. Crupi is highly educated, possesses a PhD, and was fully capable of reading and understanding the Arbitration Agreement.  Indeed, in her improper second complaint in state court, she describes herself as having "an astounding college and academic career", as "incredibly resourceful, creative, intelligent and hardworking", and as "extremely intelligent."

Finally, Dr. Crupi's argument that her claims are outside the scope of arbitration lack merit.  Her two claims for whistleblowing retaliation and constructive termination are *expressly* covered by the Arbitration Agreement.[1]  Dr. Crupi does not explain why claims alleged in an improper second complaint in state court are relevant to her request.

The allegations made in this Request fail to meet Dr. Crupi's burden of showing why she should not have to Arbitrate her claims with USC.

**Dr. Crupi's Complaints about the JAMS Process Are Self-Inflicted**

---

[1] Putting aside the fact that the premise in Dr. Crupi's argument that an arbitration agreement must explicitly list each claim it covers is obviously false.  See, e.g., *Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 397 (2015) ("In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.")

JAMS ADR
Hon. Jackson Lucky
June 30, 2023
Page 3

Many of Dr. Crupi's complaints can be resolved through appropriate procedural mechanisms in the JAMS Rules.  For example, Dr. Crupi complains that potential claims were not brought by her prior attorneys, thereby necessitating her to improperly file a second complaint in state court.  JAMS Rule 10 allows Dr. Crupi to amend her Demand for Arbitration to bring new claims, with the permission of the Arbitrator.

Similarly, Dr. Crupi complains about USC's purportedly filing a late response – however, pursuant to JAMS Rule 9(c), the filing of a response is not mandatory.  The absence of a response is deemed a complete denial of the arbitration demand.  JAMS Rule 9(e).  Dr. Crupi could have chosen to bring a motion to oppose the filing of the response – but chose not to do so.  Similarly, Dr. Crupi complains about delays in the process.  As the Claimant, it is her duty to prosecute this case.  See, Cal. Code Civ. Proc. Section 583.130.  She could have chosen to propound discovery.  However, she has chosen not to do so.

In short, Dr. Crupi's complaints about the JAMS litigation process (which she initiated) do not support her request to withdraw from this Arbitration.

**Conclusion**

Under JAMS Rule 13(a), Dr. Crupi may not "terminate or withdraw" from this Arbitration, "except by written agreement of all Parties to the Arbitration."  USC does not consent to withdrawing from the arbitration.

Dr. Crupi and USC executed a mutual Arbitration Agreement to arbitrate claims.  This agreement is fully enforceable pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. sections 1 *et seq.*, the California Arbitration Act (the "CAA"), and Cal. Code of Civil Procedure sections 1280 *et seq.*  "The merits of a controversy that has been submitted to arbitration are not subject to judicial review."  *Kahn v. Chetcuti* (2002) 101 Cal. App. 4th 61, 66–67.  Dr. Crupi's arguments to the contrary lack merit.

The agreement further specifies that "[t]he parties agree that final and binding arbitration **shall** be the sole and exclusive remedy for resolving any claims covered by this Agreement, instead of any court action, which is hereby expressly waived."  See Exhibit A (emphasis added).  Similarly, JAMS Rule 13(a) prohibits Dr. Crupi from terminating or withdrawing from this Arbitration without USC's written consent, which is not forthcoming at this time.

For all of these reasons, USC respectfully requests that Dr. Crupi's request be denied.

Peter Walrod

PW

Annunziata Crupi, pro se

3711 Mentone ave, apt 19,

Los Angeles, CA, 90034

Plaintiff/Claimant


Case:

Annunziata Crupi v. University of Southern California,

JAMS Ref. No. 5220000062.


**Counter-response to Defendant's response to Claimant's request to remove the case from JAMS:**

**Response to "No Legal Basis for "Removal" from Arbitration""**

1) Claimant is not a lawyer nor is a US citizen, doesn't know the law nor was requested to know the law at the time of the signing of the arbitration agreement.
2) Claimant has not initiated the arbitration demand. Gregory Wong has committed identity theft and misrepresentation against Claimant in order to submit an arbitration demand to JAMS without discussing it with Claimant and by providing false and misleading information to Claimant or by concealing important information.
3) Gregory Wong has thoroughly demonstrated incompetence and bad faith: (i) the claims filed to JAMS don't even represent the facts, (ii) the arbitration demand filed in JAMS has never been shared with Claimant before filing it to JAMS and has been send to Claimant only after Claimant had decided to release Gregory Wong, (iii) the narrative included in the arbitration demand is incomplete, inaccurate, or false, (iv) Gregory Wong has a conflict of interests with USC.

**Response to "Dr. Crupi's Underlying Contentions Are Conclusory and Lack Merit"**

Claimant has been subjected to an objectively extreme stress during and after the employment at USC and throughout the whole duration of the legal proceeding, therefore Claimant has been on PTSD (post traumatic stress disorder) since then - PTSD caused by defendants and by their associates, how it is easily observable from the emails and from the video in the hands of Claimant.

PTSD is recognized as a disability and therefore Claimant had been mentally disabled and was uncapable of properly handling the situation here in object, of understanding the situation, and of timely performing the actions needed for the legal proceeding. The law recognizes PTSD due to infliction of emotional distress as a way of perpetrating coercive control over the victim.

**Response to "Dr. Crupi's Complaints about the JAMS Process Are Self-Inflicted"**

Claimant is not a lawyer and is in pro se, after spending 1 year unsuccessfully looking for legal representation for a case that has been wrongfully set to $25,000 - which is less than the bare minimum that any lawyer would ask for such a complex legal matter – and that has been filed to JAMS without at

least attempting a court filing, as it is common practice to do. The filing in JAMS has hindered Claimant from finding legal representation, as the great majority of lawyers consider JAMS as a biased institution which favors the employer, is therefore one of the reasons why Claimant is now in pro se.

**Breach of Contract**

JAMS has demonstrated to being uncollaborative and biased, has systematically prevented Claimant from meeting deadlines and statutes of limitations, has been persistently unresponsive, has withdrawn information in ways that prevented Claimant from obtaining the services granted by JAMS and USC through the Arbitration Agreement itself, has not enforced JAMS rules, and has never enforced the deadlines given to USC, including the deadline of the 23 of June given to USC to submit a response to Claimant regarding the request for the removal of the case. In other words, JAMS has invalidated the Arbitration Agreement by not meeting the requirements necessary for an arbitration institution, and by not guaranteeing the rights that the arbitration agreement and the filing of the arbitration demand to JAMS were supposed to grant to Claimant. Moreover, JAMS has favored and caused extreme delays in the resolution of the legal matter, delays that go beyond any reasonable delay expected for this sort of legal matters in any US court.

Claimant has the right to obtain the removal of the case from JAMS and therefore requests to JAMS to remove the case from JAMS without possibility of appealing.


06/30/2023

Annunziata Crupi, Plaintiff, pro se



Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
Miami
vedderprice.com

July 3, 2023

Candice T. Zee
Shareholder
+1 424 204 7771
czee@vedderprice.com

Peter Walrod
Associate
+1 (415) 749 9518
pwalrod@vedderprice.com

JAMS ADR
JLucky@jamsadr.com
MelissaOrnstil@jamsadr.com
OMontealegre@jamsadr.com

Re:     Annunziata Crupi ("Dr. Crupi") v. University of Southern California,
        JAMS Ref. No. 5220000062.

Dear Hon. Jackson Lucky,

This letter is in response to Dr. Crupi's letters of June 30, and July 2.

Respondent University of Southern California ("USC") reiterates its opposition to Dr. Crupi's request to terminate these proceedings, which she herself brought in this forum.

None of the facts, law, or argument contained in Dr. Crupi's further briefing change, or address, the fact that she consented to JAMS jurisdiction and waived all arguments to the contrary.  Her underlying contentions that her prior attorneys "fraudulently" and "incompetently" chose to litigate in arbitration are, like the rest of her arguments, conclusory and lacking in merit.

Furthermore, the proper remedy for Dr. Crupi's objections to the purported misconduct of the JAMS staff is to challenge the outcome of this arbitration in court – but not to end the arbitration proceedings.

Finally, Dr. Crupi makes no showing of prejudice suffered by USC filing its response to her letter on June 26.

For all of these reasons, and the reasons stated in USC's letter of June 26, Dr. Crupi's request must be denied.

Peter Walrod

PW

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

# EXHIBIT G

Olga Montealegre - Arbitration Management Conference

**Crupi, Annunziata vs. University of Southern California**

#5220000062

<u>Participants:</u> annunziata crupi, Jackson Lucky, Olga Montealegre, Matthew Bobb, Gabrielle Mercurio, Jeffrey Gimble, Peter Walrod, Ilda Reiner, Candice Zee, Dale Pippo,

---

annunziata crupi

08/02/2023 06:01 PM

Thanks Olga, based on Rule 16 the hearing aims at defining the discovery plan. Based on our current circumstances the discovery plan is necessary only if the case stays in JAMS. We have a motion pending: vacating the Judge's ruling and removing the case from JAMS. The result of the application of that petition, which must be done by the 16th of August 2023, will make this conference unnecessary. Hence, the hearing is not necessary at this time and would allow the other party to conduct a discovery plan in advance as compared to what required by Court, giving USC an advantage that they have already tried to get multiple times. As per previous communication, the Arbitrators, Judge Lucky, and JAMS, have already allowed the other party to reschedule hearings, rulings, and to hugely delay the filing of documents. Hence, I suggest to reschedule, and/or completely cancel, this hearing to after the application of the petition I have filed. This is the most efficient and the only neutral option. As you all know, I have a huge case in Court, another one to file for discrimination, and I am working 24/7, so, as I have explained to the other party already, I do not have the physical time for conferences that are not necessary. My first availability for conferences that are unecessary, and/or that are just an attempt to harass me, is in a few months. I will let you know if anything changes based on how things evolve. Dr Annunziata Crupi, PhD

---

Olga Montealegre

08/02/2023 05:28 PM

Good afternoon, Please refer to Rule 16 of the Employment Arbitration Rules & Procedures.

---

Peter Walrod

08/02/2023 05:27 PM

Dear Olga, Respondents are available on Wednesday, 8/9 for any of the times, and Friday, 8/11 at 9:30 AM. Thank you.

---

annunziata crupi

08/02/2023 05:07 PM

Hi Olga. Please provide the following information: What is the conference for exactly? 1) is this conference about the petition I have filed requesting to vacate the ruling? Yes or no 2) Is the conference about the discovery plan? yes or no 3) Does the conference require to list evidence and/or to define a discovery plan before, during, or after the conference? yer or no 4) What is the goal of the conference? What is it aiming to achieve? What is the topic we will be discussing about? 6) Will holding the conference define new deadlines and/or start the process of the arbitration that, as of today, hasn't been started yet? Each and every forum is expected to provide information when requested. Please provide information so that we can move futher. Based on your message, through this conference the arbitrator is trying to define the amount of hearing time needed for the case. In order to define the hearing time, the arbitrator will need a discovery plan. I do not have a discovery plan and I have requested to remove the case from JAMS, therefore a discovery plan is not necessary. If this conference requires a discovery plan or a list of evidence or other related issues, the conference is not necessary. I have requested to vacate the ruling regarding the denial to remove the case from JAMS. If the conference is meant to discuss that petition, there is nothing to discuss. The judge has the option to vacate the ruling within 21 days from filing the petition, or I will be filing it to court. Please let me know. Dr Annunziata Crupi, PhD

---

Olga Montealegre

08/02/2023 04:09 PM

Dear Parties: I am attempting to schedule a preliminary arbitration management conference in the above-referenced matter. This conference is to establish a briefing schedule, dates for exchange of documents, hearing dates, etc. This call is NOT to discuss substantive issues. The Arbitrator will assist the parties in determining how much hearing time is needed on the conference call. Below is a list of the Arbitrator's current available dates: - Wednesday, August 9th at 8:30 AM, 9:00 AM, 9:30 AM or at 10:00 AM (PT) - Friday, August 11th at 9:30 AM (PT) - Monday, August 14th at 9:30 AM, 10:00 AM, or 2:00 PM (PT) Please provide your availability by replying all to this message no later than Monday, August 7, 2023. If I do not receive a response from you regarding the scheduling of this matter, I will assume that any of the above available dates for the conference call are agreeable with your calendars. Thank you for your anticipated cooperation in this matter. I look forward to hearing from you shortly. Regards, O Montealegre

# EXHIBIT H

**Walrod, Peter**

| | |
|---|---|
| **From:** | Walrod, Peter |
| **Sent:** | Monday, October 16, 2023 7:59 AM |
| **To:** | Nancy Crupi; nancycrupi1986@gmail.com |
| **Cc:** | Zee, Candice |
| **Subject:** | Re: Crupi v. USC [VED-VP.FID4931037] |
| **Attachments:** | Crupi Arbitration Agreement.pdf |

Dr. Crupi,

I write to request that you submit your claims in the federal case to arbitration consistent with the terms of the Parties' arbitration agreement. Please advise if you will do so.

On January 6, 2021, you signed an Agreement to Arbitrate Claims, which is attached. Notably, you attached a copy of this agreement to your Demand for Arbitration, which was received on November 19, 2021. When you began a second litigation in state court, you also attached several prior arbitration agreements, and a page from this agreement, to your complaint.

The agreement covers the following claims:

> Any claim that otherwise would have been decidable in a court of law — whether under local, state, or federal law — will instead be decided by arbitration, except as specifically excluded by this Agreement. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for "whistleblowing" or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

And further states that, "[t]he parties agree that final and binding arbitration shall be the sole and exclusive remedy for resolving any claims covered by this Agreement, instead of any court action, which is hereby expressly waived."

Based on the above, you violated the Agreement by filing the lawsuit in state court. Every cause of action you allege is related to your employment. Thus, the Agreement covers the claims asserted in the lawsuit.

If you do not agree to arbitrate the claims, Defendants will move to compel arbitration no later than Thursday, October 19, 2023. Please let me know a time today you are available to discuss by phone, if you wish to meet and confer further. Thanks.

**Peter Walrod,** Associate

**Vedder**Price

T +1 415 749 9518  C +1 949 280 5304
1 Post Street, Suite 2400, San Francisco, CA 94104
web | email | offices | biography

*Rev. July 2019*

**AGREEMENT TO ARBITRATE CLAIMS**

Internal processes are available for collegially resolving differences that may arise between the University of Southern California (the "University") and its faculty or staff, including formal faculty grievance and staff complaint procedures. If, for whatever reason, internal collegial processes do not resolve such differences, final and binding impartial arbitration is a means of avoiding the delay, expense, and unpleasantness of a lawsuit.

Therefore, the University and the faculty or staff member named below ("Employee") agree to the resolution by arbitration of all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee. Any claim that otherwise would have been decidable in a court of law — whether under local, state, or federal law — will instead be decided by arbitration, except as specifically excluded by this Agreement. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); claims for personal, physical, or emotional injury, or for any tort; claims for discrimination or harassment (including, but not limited to, race, sex, religion, national origin, age, marital status, sexual orientation, gender identity or expression, military and veteran status, or medical condition or disability); claims for "whistleblowing" or retaliation; and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

Notwithstanding the foregoing, the following claims are not covered by this Agreement: (1) claims brought under Title VII of the Civil Rights Act of 1964; (2) tort claims (e.g., assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention) if they are related to or arising out of sexual assault or sexual harassment; (3) claims for workers' compensation or unemployment compensation; (4) claims by or against faculty that are subject to review by writ of administrative mandamus under California Code of Civil Procedure Section 1094.5 or any successor statute; (5) claims that are arbitrable under a collective bargaining agreement governing Employee's employment; (6) claims arising under the National Labor Relations Act; and (7) claims that as a matter of law (after application of Federal Arbitration Act preemption principles) may not be subject to a predispute agreement to arbitrate.

The parties agree that final and binding arbitration shall be the sole and exclusive remedy for resolving any claims covered by this Agreement, instead of any court action, which is hereby expressly waived.

Any arbitration conducted pursuant to this Agreement shall be held in Los Angeles, California (or in the city in which the Employee is or was employed by the University). Any arbitration pursuant to this Agreement shall be held under the auspices of JAMS, and conducted in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), except to the extent such rules conflict with the procedures set forth herein. The JAMS Employment Arbitration Rules & Procedures are currently available at http://www.jamsadr.com/rules-employment-arbitration, and Employee understands USC will provide a printed copy upon request. Employee's share of the arbitrator's fee and the JAMS filing fee shall be no more than the then-current filing fee in the California Superior Court (or

USC000027

*Rev. July 2019*

the equivalent state court in the event the arbitration is initiated outside California). The arbitrator may grant a waiver of Employee's share of these fees upon a showing of hardship. Employee and the University shall each bear their own costs relating to the arbitration and their own attorneys' fees, except as otherwise provided by law and as set forth in this Agreement. This Agreement supersedes any prior or contemporaneous agreement on the subject, shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the "Agreement to Arbitrate Claims" and is signed by the President of the University.

Employee or the University must give written notice of any claim to the other party within the time prescribed by the state or federal statute of limitations applicable to the claim being made. Any claim for which notice is not given within the time prescribed by the applicable state or federal statute of limitations, shall be barred. The written notice shall identify and factually describe the nature of all claims asserted, and in case of notice to the University, it shall be directed to the Provost (for faculty) or the Senior Vice President for Administration (for staff).

Notwithstanding any provision of the JAMS Rules, arbitration shall occur on an individual basis only, and a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the formation, validity, or enforceability of this Agreement.  Thus, to the maximum extent permitted by law, Employee hereby waives any right to bring on behalf of persons other than Employee, or to otherwise participate with other persons in, any class or collective action. Employee retains the right to bring claims in arbitration for himself or herself as an individual (and only for himself or herself).

The arbitrator shall award all the remedies to which the prevailing party is legally entitled, including attorneys' fees and/or litigation costs if recoverable under applicable law. The arbitrator may not, however, award remedies that would be unavailable in court under the legal standards applicable to the claim(s) asserted. The arbitrator shall afford the parties adequate discovery, including deposition discovery, taking into account their shared desire to have a fast, cost-effective dispute-resolution mechanism. The Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act either is inapplicable, or held not to require arbitration of a particular claim or claims, California law pertaining to agreements to arbitrate shall apply. The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. The arbitrator shall render an award and a written, reasoned opinion in support thereof. Judgment on the award may be entered in any court having jurisdiction thereof.

USC000028

*Rev. July 2019*

This Agreement shall not be interpreted to preclude Employee from filing (or recovering through) an administrative charge or complaint with, or communicating in any way with, the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, the California Division of Labor Standards Enforcement, the National Labor Relations Board, or any other federal, state, or local agency or official. If any provision of this Agreement is determined to be void or otherwise unenforceable, this determination shall not affect the validity of the remainder of the Agreement.

Employee understands and agrees that by signing this agreement, he/she and the University are giving up their respective rights to a jury trial.

Date: 01/06/2021

By: _____
Employee's signature

Annunziata Crupi
Full name of employee

By: _____
Carol L. Folt, President
University of Southern California

3